**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

CENTRE HILL COURTS
CONDOMINIUM ASSOCIATION, INC.,

     Plaintiff,

                               Case No.: 9-19-CV-80111BB

vs.

ROCKHILL INSURANCE COMPANY,

     Defendant.

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR
PROTECTIVE ORDER AND OBJECTIONS TO PLAINTIFF'S AMENDED NOTICE
OF TAKING DEFENDANT'S  30(b)(6) CORPORATE REPRESENTATIVE
VIDEOTAPED DEPOSITION DUCES TECUM**

     Plaintiff, CENTRE HILL COURTS CONDOMINIUM ASSOCIATION, INC.,
("Plaintiff"), by and through its undersigned counsel and pursuant to the Federal Rules of Civil
Procedure and Local Rule 7.1(c), hereby files this Response in Opposition to Defendant,
ROCKHILL INSURANCE COMPANY's ("Defendant"), Motion for Protective Order and
Objections to Plaintiff's Amended Notice of Taking Defendant's 30(b)(6) Corporate
Representative Videotaped Deposition Duces Tecum, scheduled for July 30, 2019 [D.E. 39], and
in support thereof states as follows:

**I.**    **Background**

    1.    This action arises from Plaintiff's first-party property insurance claim for the
physical damages suffered to its property due to wind as a result of Hurricane Irma, and a breach
of contract action filed by Plaintiff on or about October 17, 2018, in the Circuit Court of the
Fifteenth Judicial Circuit in and for Palm Beach County, Florida ("Complaint").

2.      On January 25, 2019, Defendant filed its Notice of Removal based upon diversity jurisdiction pursuant to 28 U.S.C. § 1441-1452. [D.E. 1].

3.      On February 20, 2019, the Court entered an Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge ("Trial Order"), setting the matter for two-week trial beginning on February 18, 2020 and setting commensurate deadlines. [D.E. 17.]

4.      The Court's Trial Order sets forth a deadline of October 8, 2019 to complete all discovery (including expert discovery).  [D.E. 17.]

5.      In order to discover more facts relating to Defendant's coverage position and its affirmative defenses, Plaintiff requested the deposition of Defendant's Corporate Representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.

6.      On May 31, 2019, Plaintiff served a Notice of Videotaped Deposition of Rockhill Insurance Company's Corporate Representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure.  Plaintiff's counsel asked Defendant's counsel to provide, within 14 days, available dates for the deposition and Defendant's counsel provided the available date of July 30, 2019.

7.      On July 11, 2019, Plaintiff served an Amended Notice of Videotaped Deposition of Rockhill Insurance Company's Corporate Representative pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure to include the date, time and location of the deposition ("Notice"). A copy of the Notice is attached as **Exhibit "A."**

8.      The Notice contained a "Schedule A" with sixteen Topics of Inquiry and a "Schedule B" of twenty-three categories of "Requested Records."

2

9.      On July 24, 2019, Defendant's counsel contacted Plaintiffs' counsel to confer regarding Defendant's objections to the scope of the Notice. Plaintiff's counsel and Defendant's counsel spoke via telephone on July 24, 2019. The parties agreed that Defendant would not be required to produce "original" documents as the Notice required. The parties did not reach agreement on several other issues, which are the subject of the instant dispute.

10.      On July 25, 2019, Defendant filed its Motion for Protective Order and Objections to Plaintiff's Amended Notice of Taking Defendant's 30(b)(6) Corporate Representative Videotaped Deposition Duces Tecum, scheduled for July 30, 2019 [D.E. 39] ("Motion").

11.      In its Motion, Defendant does not object to the Topics of Inquiry numbered 1-7, 13-14 and 16.

12.      Defendant requests this Court grant its Motion and sustain its objections to the requests contained in the Notice. Specifically, Defendant's objections are as to Topics of Inquiry numbered 8-12, and 15 and the Requested Records numbered 3-4, 11-14, 16-22.

13.      On July 30, 2019, Plaintiff's counsel took the deposition of Rockhill's 30(b)(6) corporate representative, Sherri King.

**II.      Standard of Review**

Rule 26 of the Federal Rules of Civil Procedure provides that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden, or expense, including one or more of the following: (A) forbidding the disclosure or discovery." *See* Fed. R. Civ. P. 26(c)(1)(A). When evaluating whether a movant has satisfied his burden of establishing "good cause" for a protective order preventing discovery, a court should balance the non-moving party's interest in obtaining discovery and preparing for trial against a

moving party's proffer of harm that would result from the discovery. *See Fransworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1989).

The party requesting a protective order must make a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm which will result without one. *Dunford v. Rolly Marine Service Co.,* 233, F.R.D. 635, 636 (S.D. Fla. 2005). Here, Defendant, as the moving party, bears the burden of establishing good cause for the protective order it seeks with regard to the Notice of Deposition addressed to Defendant in this matter. For the reasons discussed below, Defendant has failed to demonstrate good cause.

### III.     Defendant's Motion for Protective Order should be denied.

#### A. Defendant is in Direct Violation of the Court's Procedures for Discovery Disputes

Pursuant to the Trial Order, all discovery matters are referred to Magistrate Judge Bruce Reinhart for resolution. [D.E. 17]. Section III of the Standing Discovery Order entered by Magistrate Judge Bruce Reinhart ("Standing Order") [D.E. 19 at 8] provides:

> **A.** **Pre-hearing Communication**. **If a discovery dispute arises, counsel must actually speak to one another (in person or vial telephone)** and engage in reasonable compromise in a genuine effort to resolve their discovery disputes **before seeking Court intervention**.
>
> **B.** **Hearing Procedures**. If, after conferring, the parties are unable to resolve their discovery disputes without Court intervention, Magistrate Judge Reinhart will set the matter for a hearing pursuant to the following procedure. **No discovery motions shall be filed until after the parties have engaged in this process. If the dispute is not resolved at the discovery hearing, the Court will consider authorizing the filing of an appropriate discovery motion,** which will then implicate the sanctions provisions of Federal Rule of Civil Procedure 37 (a)(5).

Emphasis added.

Thus, no written discovery motions, including a motion for protective order, shall be filed unless Judge Reinhart directs so at the discovery hearing. Defendant's motion is in violation of this Court's discovery procedures.  Accordingly, the Motion should be denied.

Even if the Court rules on Plaintiff's motion without first setting a discovery hearing, the motion does not comply Section I(B) of the Standing Discovery Order, which provides in part: . . . [a] motion seeking relief under Rule 26(c) must include a  specific explanation, supported by facts, demonstrating how complying with the discovery request would cause annoyance, embarrassment, oppression or undue burden or cost." The Standing Discovery Order further explains "[t]he Court will reject a conclusory unsupported statement that Rule 26(c) relief is warranted."

### B.  Underwriting File

The main crux of the dispute between Plaintiff and Defendant as to  Defendant's objections to the Notice is Number 16 of Schedule B: Requested Records, requesting that Defendant produce its underwriting file:

> 16. A copy of the complete Underwriting file (cover to cover) for CENTRE HILL's Property, including but not limited to, copies of any insurance policies, inspections, reports, appraisals, photographs and/or videos, applications and all policy forms and endorsements that became effective after the policy was issued.

Rockhill asserted the following objection to this request:

> Rockhill objects to the Request to the extent it seeks information which is neither relevant nor discoverable in a first party breach of insurance contract action. *See Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 698 (S.D. Fla. 2007)(reasoning that underwriting files are normally not relevant in breach of insurance contract claims); *Royal Bahamian Ass'n, Inc. v. QBE Ins. Co*., 268 F.R.D. 692 (S.D. Fla. 2010). Notwithstanding the above objection, at this time Rockhill has not identified any records reflecting the pre-loss condition of the property which would be responsive to this Request.

When an insurer denies payment based on a pre-existing condition, the insurer's decision to accept the risk (i.e. the underwriting file) becomes relevant and discoverable.  Underwriting files or other information related to the risk, analysis of the risk, prior claims, the insured's operations, etc., are reasonably calculated to lead to discovery of admissible evidence. The condition of the Plaintiff's property when Defendant issued Plaintiff's property insurance policy is relevant especially when Defendant contends a prior condition of the property caused any of the damages complained of in this lawsuit. Plaintiff seeks to determine documents, knowledge or information about the underwriting investigation completed by Defendant and/or its representatives. This includes documents, knowledge or information relating to the age of the roofs and the condition of Plaintiff's property prior to Hurricane Irma and prior to Plaintiff's insurance claim, which Defendant used as a basis to deny Plaintiff's insurance claim.  Case law has addressed discovery of an underwriting file when pre-existing condition is alleged:

> **The underwriting file,** however, **is relevant**. QBE argues that some of the claimed damages pre-existed the insurance policy and are, therefore, not covered by the policy. The underwriting file should address this argument. Accordingly, QBE shall produce all non-duplicative documents memorializing, elaborating and governing the Policy since its inception, including the underwriting file. QBE has ten days to provide these documents.

*1550 Brickell Assoc. v. QBE Ins. Corp.*, 2008 WL 4279538, at * 2 (S.D. Fla. July 8, 2008). (Emphasis added.)

Request number 16 is specifically tailored to Defendant's underwriting file and is not overbroad or unduly burdensome.  Here, documents within Defendant's underwriting file are germane to Defendant's Second Affirmative Defense which alleges that "all or part of the damage is excluded under the Policy's Wear and Tear Exclusion" [D.E. 11 at 16.] and Defendant's Fourth Affirmative Defense, which alleges that "all or part of the damage commenced/occurred prior to the effective date of the Policy and is therefore not covered under the Policy." [D.E. 11 at 16-17.]

6

Further, an Order recently entered in another case in the Southern District on April 30, 2019, required Defendant to produce "those documents in the underwriting file that relate to the pre-loss condition of the property at issue." See D.E. 61 in *The Cantonis Company v. Certain Interested Underwriters at Lloyds London, Subscribing to Policy No.: B0429BA1503204/LWH000558 et al*, Case No. 18-81703.

In this case, Plaintiff's counsel conferred with Defendant's counsel regarding Defendant's objections to production of the underwriting file, which Plaintiffs also requested in their request for production of documents to Defendant. See letter from Plaintiff's counsel dated June 10, 2019, attached as **Exhibit "B."** Defendant's counsel advised Plaintiff's counsel that they "reviewed the underwriting file", but "we did not identify any prior inspections, photos, reports, or other records which would be responsive to [Plaintiff's] request." See email from Defendant's counsel dated July 10, 2019, attached as **Exhibit "C."** Defendant thinks it can decide by reviewing its own underwriting file what is or is not relevant to this case and what related to the pre-condition of Plaintiff's property. Plaintiff should not be precluded from conducting its own review of Defendant's underwriting file.

Finally, Defendant's concerns regarding the confidential and proprietary nature of the underwriting documents do not make them exempt from discovery. *I.S.E.L., Inc. v. Am. Synthol, Inc.*, 3:08-CV-870-J-25TEM, 2009 WL 3367237, *2 (M.D. Fla. Oct. 15, 2009) ("there is no absolute privilege that immunizes trade secrets and similar confidential information from discovery"). Courts routinely order the production of such documents subject to the protections of a confidentiality order. *See, e.g., In re Denture Cream Prods. Liab. Litig.*, 09-2051-MD, 2011 WL 1979666, *5 (S.D. Fla. May 20, 2011); *Jeld Wen, Inc. v. Nebula Glass Int'l, Inc.*, No. 05-60860-civ, 2007 WL 1526649, *3 (S.D. Fla. May 22, 2007). Plaintiff has no objection to the production

of these documents subject to a confidentiality agreement that addresses any concerns Defendant may have. Thus, there is no basis for Defendant to withhold these relevant documents. *See, e.g., Allstate Ins. Co. v. Levesque*, 263 F.R.D. 663, 670 (M.D. Fla. 2010) (ordering confidential records produced subject to a confidentiality agreement); *In re Denture Cream*, 2011 WL 1979666, *5 (rejecting plaintiffs' claim that a settlement agreement was confidential and hence non-discoverable).

On July 30, 2019, Defendant produced Sherri King, claims and risk engineering manager for State Auto Insurance, as its 30(b)(6) corporate representative in response to the Notice. [See **Exhibit "D",** Deposition Transcript of Sherri King ("King Dep. Tr.") at 10:16-23.] The sworn deposition testimony of Ms. King revealed that a third party, RT Specialty, does the underwriting for the selection of risks such as Plaintiff's insured property. [Ex. D, King Dep. Tr. at 27: 12-18.] Further, Ms. King testified the Plaintiff's policy was underwritten by RT Specialty.  [Ex. D, King Dep. Tr. at 97:10-12.] However, Ms. King testified that if she wanted to look at the underwriting file that Rockhill maintains regarding Plaintiff, that all she has to do is reach out to support staff. [Ex. D, King Dep. Tr. at 28:1-24.] Thus, the underwriting file is easily accessible and there is no undue burden to Defendant to produce it to Plaintiff.

Based on Ms. King's sworn testimony, Plaintiff has also issued a Notice of Intent to Issue Subpoena to RT Specialty for underwriting related documents, including any underwriting file(s) it maintains regarding Plaintiff's insured property, however, still request that the Court enter an Order requiring Defendant to produce any underwriting file(s) in its possession relating to Plaintiff's property and a 30(b)(6) corporate representative with knowledge to testify regarding such documents.

As required in *1550 Brickell Assoc.,* Defendant should be required to produce the entirety of its underwriting file. Defendant failed to meet its burden to establish good cause to thwart Plaintiff's germane discovery request for the underwriting file, and, therefore, Defendant's Motion should be denied.

### C.  Defendant's General Objections

First, Defendant objected to the Notice, "to the extent the Areas of Inquiry in Schedule A and the documents in Schedule B of the Notice prematurely seek expert discovery." [D.E. 39 at 1.] At this time, the parties do not have a remaining dispute as to this issue. Plaintiff understands that the Trial Order contains an expert disclosure deadline of September 24, 2019. [D.E. 17 at 2.]

Second, Defendant objected to the Notice "to the extent it seeks the discovery of information that is irrelevant to the underlying claim, and/or is proprietary and confidential." [D.E. 39 at 1.]  Only when a party proves the existence of compelling reasons for imposing restrictions on discovery should the Court determine documents are privileged or confidential.  *See Merrill-Stevens Yacht Sales, LLC v. Ft. Lurssen Werft, GmbH &  Co. KG*, 2008 WL 2690798 at *2 (S.D. Fla. July 2, 2008) ("a party seeking to shield its trade secrets or other confidential information must establish that the information sought to be protected is confidential and that the disclosure might be harmful.").

In order to meet is burden of showing that particular documents are to be designated as confidential, Defendant must identify specific documents and must make a "particular and specific demonstration of fact" which supports these claims.  *See General Dynamics Corp. v. Selb Mfg. Co.*, 481 F. 2d 1204, 1212 (8th Cir. 1974). The proof required to meet Defendant's heavy burden is two-fold:  First, Defendant is required to identify the *specific* discovery materials and particular documents which Defendant seeks to restrict.  Second, Defendant must identify the particular

circumstances and manner in which the disclosure of materials without a confidentiality order would inflict harm.  *See Koster v. Chase Manhattan Bank*, 93 F.R.D. 471 (S.D.N.Y. 1982).

Simply put, other than Defendant's counsel's assertions, Defendant has failed to put forth any competent evidence before this Court *substantiating* its Motion.  To the extent Defendant is claiming documents are proprietary or confidential, as stated above, Plaintiff has no objection to the production of documents subject to a confidentiality agreement that addresses any concerns Defendant may have.

### D.  Defendant's Specific Objections to Schedule A: Topics of Inquiry

Plaintiff's Schedule A contained sixteen Topics of Inquiry. Defendant did not object to numbers 1-7, 13-14 and 16. Thus, the Topics of Inquiry in dispute are 8-12, and 15-22.

Numbers 8-12 related to Rockhill's experts. As explained above, after the taking of Ms. King's deposition, the parties do not have a remaining dispute as to Topics of Inquiry 8-12.

Number 15 specifies "The person(s) designated by Rockhill regarding Rockhill's preferred vendor program in regards to all experts and representatives used in this matter." Ms. King testified that she didn't make the decision regarding Rockhill's retention of experts. Ms. King testified that the adjuster handing this case was Vincent Cicci of Engle Martin & Associates. [Ex. D, King Dep. Tr. at 34:23-35:3 and 48:17-21.] Ms. King further testified that she provided authority to Engle Martin to retain an engineer and a building consultant regarding Plaintiff's claim. [Ex. D., King Dep. Tr. at 69:8-10.]   Plaintiff has requested dates for the depositions of several others of Defendant's witnesses, including Vincent Cicci, the adjuster from Engle Martin, who was retained by Defendant.

### E.  Defendant's Specific Objections to Schedule B: Requested Records

Defendant asserted specific objections numbers 3-4, 11-14, 16-22 of the Requested Records.

Numbers 3 and 11 relate to Rockhill's experts. As explained above, after the taking of Ms. King's deposition, the parties do not have a remaining dispute as to Requested Records 3 and 11. Further, Plaintiff has issued subpoenas to third parties, Madsen Kneppers & Associates, and Young & Associates, retained by Defendant in this case.

Number 16 is a request for the underwriting file, discussed in Section III, B. of this response.

Numbers 17 through 22 request that Defendant produce the following documents to Plaintiff:

17. Copies of any and all documentation provided to ROCKHILL by any independent adjusting company, vendor, consultant or expert ROCKHILL relied on in this matter to qualify to be accepted on ROCKHILL's approved vendor list(s).

18. Copies of any and all documentation provided to any independent adjusting company, vendor, consultant or expert relied on in this matter by ROCKHILL to qualify to be accepted on ROCKHILL's approved vendor list(s).

19. Copies of any approved vendor lists for the years 2016, 2017 and 2018 wherein any vendor, independent adjusting company, consultant or expert ROCKHILL relied on this matter is listed on.

20. Copies of any documentation and/or information, for the years 2016, 2017 and 2018 that ROCKHILL provides to any independent adjusting company, vendor, consultant or expert who seek to be listed on ROCKHILL's approved vendor list.

21. Copies of any application(s), questionnaires, or forms provided to any independent adjusting company, vendor, consultant or expert that seeks to be listed on ROCKHILL's approved vendor list, for the years 2016, 2017 and 2018.

22. Copies of any guidelines or procedures utilized by ROCKHILL to approve any

11

independent adjusting company, vendor, consultant or expert that is to be listed
on ROCKHILL approved vendor list, for the years 2016, 2017 and 2018.

In this case, the objectivity and reasonableness of Defendant's investigation is at issue.
Plaintiff has alleged that Defendant inadequately investigated and adjusted Plaintiff's claim. [D.E.
10-1 at ¶ 72.] Defendant objects to the production of documents evidencing a special relationship
between Defendant and its retained consultants and/or their professional associations, including,
but not limited to, Vincent Cicci, Ruben Molinar, Roy Didion, Arthur Ashworth, P.E., Andre
Slintak, P.E., Andrew Peters, Engle Martin & Associates, Inc., Young & Associates, and Madsen,
Kneppers & Associates, Inc.

Plaintiff has alleged Defendant used preferred vendors to assist in the investigation of the
claim and those vendors provided Defendant with outcome-oriented opinions on the cause of the
damages. Evidence of a special relationship between an expert witness and/or consultant and the
insurance company is relevant to demonstrate the possible bias of the expert witness, and discovery
that is reasonably calculated to lead to such evidence is permitted. Defendant has not provided any
evidentiary proof that the documents are nevertheless entitled to protection based upon work
product immunity and attorney-client privilege.

It is well settled Florida law that discovery sought about the extent of a party's relationship
with a particular expert is discoverable. The Florida Supreme Court case on point is entitled
*Allstate Insurance Company v. Boecher*, 733 So.2d 993, 997-98 (Fla. 1999). In *Boecher*, the issue
before the court was "whether a party is prohibited from obtaining discovery from the opposing
party regarding the extent of that party's relationship with an expert." *Id.* at 994. (Emphasis
added). The Florida Supreme Court clearly held that "[w]e conclude that where the discovery
sought is directed to a party about the extent of that party's relationship with a particular expert,
the balance of the interests shifts in favor of allowing the pretrial discovery." *Id.* at 997.

12

The *Boecher* court held that discovery sought and identity of cases and the amount of fees paid to the expert during the preceding three (3) years is proper discovery.  A jury is entitled to know the extent of the financial connection between a party and a witness, and a cumulative amount a party has paid an expert during their relationship.

> The information sought here would reveal how often the expert testified on Allstate's behalf and how much money the expert made from its relationship with Allstate. The information sought in this case does not just lead to the discovery of admissible information. The information requested is directly relevant to a party's efforts to demonstrate to the jury the witness's bias.
>
> The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing. A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness's financial incentive to continue the financially advantageous relationship.

*Id.* at 997-998.

The *Boecher* Court expressly held that the financial relationship between expert and a party is directly relevant to a party's efforts to demonstrate the financial bias of a witness.   The Court clearly found that "the more extensive the financial relationship between a party and a witness, the more it is likely the witness has a vested interested in that financially beneficial relationship continuing." *Id* at 997.  Here, there is believed to be an extensive financial relationship between Defendant and its investigating representatives and/or experts.  Therefore, the discovery sought is material and relevant.

Ms. King testified that the adjuster handing this case was Vincent Cicci of Engle Martin & Associates. [Ex. D, King Dep. Tr. at 34:23-35:3 and 48:17-21.] Engle Martin became the designated adjuster in the insurance policies such as the one Defendant issued to Plaintiff. [Ex. D, King Dep. Tr. at  35:4:7.] As stated above, Ms. King further testified that she provided authority

to Engle Martin to retain an engineer and a building consultant regarding Plaintiff's claim. [Ex. D, King Dep. Tr. at 69:8-10.]  Based on Ms. King's testimony, Plaintiff has requested the deposition of Mr. Vincent Cicci of Engle Martin.

      **WHEREFORE,** Plaintiff, CENTRE HILL COURTS CONDOMINIUM ASSOCIATION, respectfully requests that this Court issue an Order:

      (i) denying Defendant ROCKHILL INSURANCE COMPANY's Motion for Protective Order and Objections to Plaintiff's Amended Notice of Taking Defendant's 30(b)(6) Corporate Representative Videotaped Deposition Duces Tecum, scheduled for July 30, 2019;

      (ii) requiring Defendant to produce the underwriting file(s) relating to Plaintiff's property;

      (iii) requiring Defendant to produce a 30(b)(6) witness to testify with respect to any underwriting documents relating to Plaintiff's property;

      (iv) requiring Defendant to produce documents responsive to numbers 17 through 22 of Schedule B of Plaintiff's Amended Notice of Taking Defendant's 30(b)(6) Corporate Representative Videotaped Deposition Duces Tecum, scheduled for July 30, 2019 [D.E. 39]; and

      (v) granting Plaintiff any other relief that this Court deems just and proper.

Dated: August 8, 2019          Respectfully submitted,

                    **MERLIN LAW GROUP, P.A.**

                    */s/ Shane S. Smith*
                    **WILLIAM F. MERLIN, JR., ESQUIRE**
                    Florida Bar Number: 364721
                    **ERISELDA KUHN, ESQUIRE**
                    Florida Bar Number: 1003031
                    **SHANE S. SMITH, ESQUIRE**
                    Florida Bar Number: 53130
                    MERLIN LAW GROUP, P.A.
                    777 S. Harbour Island Blvd., Suite 950
                    Tampa, Florida 33602
                    Telephone: (813) 229-1000
                    Fax: (813) 229-3692

Attorneys for Plaintiff
wmerlin@merlinlawgroup.com
ikuhn@merlinlawgroup.com
ssmith@merlinlawgroup.com
rbradley@merlinlawgroup.cm

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 8, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below by notice of electronic filing generated by CM/ECF.

By: */s/ Shane S. Smith*

## SERVICE LIST

Lauren D. Levy, Esq.
LEVY LAW GROUP
3399 Ponce de Leon Blvd., Suite 202
Coral Cables, Florida 33134
lauren@levylawgroup.com
alex@levylawgroup.com
nikki@levylawgroup.com
lourdes@levylawgroup.com