UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE No.: 9-19-CV-80111-BLOOM/Reinhart

CENTRE HILL COURTS
CONDOMINIUM ASSOCIATION, INC.

  Plaintiff,

vs.

ROCKHILL INSURANCE COMPANY,

  Defendant.
_____/

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST
DEFENDANT AS TO LIABILITY FOR BREACH OF INSURANCE CONTRACT**

  Plaintiff, CENTRE HILL COURTS CONDOMINIUM ASSOCIATION INC. ("Plaintiff"), by and through its undersigned counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1 and 56.1, files this Motion for Partial Summary Judgment against Defendant, ROCKHILL INSURANCE COMPANY ("Defendant") and Memorandum of Law, and in support thereof states as follows:[1]

**INTRODUCTION**

  Plaintiff is the owner of the real property located at 825 & 875 NW 13th Street, Boca Raton, FL 33486, Palm Beach County, Florida (the "Property"). SOF ¶ 1. Defendant issued a commercial insurance policy, Policy Number EB3R16-10013 ("Policy"), which provided coverage for Plaintiff's Property for the policy period of June 15, 2017 to May 30, 2018. SOF ¶ 2 and **Exhibit "A".** On or about September 10, 2017, Hurricane Irma made landfall and caused widespread

---

[1] Plaintiff also refers the Court to its separately filed Local Rule 26.1 Statement of Undisputed Material Facts ("SOF") and Notice of Filing in Support of Motion for Partial Summary Judgment.

damage through South Florida, including severe damages to Plaintiff's Property. SOF ¶ 2. Plaintiff timely reported the loss to Defendant and cooperated with all reasonable and relevant requests made by Defendant in the investigation of Plaintiff's Hurricane Irma loss.

Plaintiff claims that Defendant breached the Policy by refusing to compensate Plaintiff for the loss to its Property. Plaintiff demanded payment but Defendant failed and refused to pay the insurance proceeds to Plaintiff as required under the Policy. Defendant's refusal to accept coverage and pay all amounts due and owing under the Policy is a breach of the insurance contract.

As a result of Defendant's failure to perform its obligations under the Policy, Plaintiff was forced to file the instant lawsuit to recover damages for breach of the contract. Plaintiff has suffered and continues to suffer harm as a result of Defendant's breach. Therefore, partial summary judgment should be granted in Plaintiff's favor as to Defendant's liability for breach of insurance contract.

Plaintiff's Motion also seeks the entry of partial summary judgment in Plaintiff's favor as to Defendant's Affirmative Defenses.

## MEMORANDUM OF LAW

**I.  Legal Standard for Summary Judgment.**

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "The moving party bears 'the initial responsibility of informing the. . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" *U.S. v. Four Parcels of Real*

*Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the initial burden is met, the non-moving party must go beyond the pleadings and come forward with specific facts showing there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Consequently, the non-moving party cannot merely rest upon his bare assertions, conclusory allegations, surmises or conjectures. *Id*. Thus, the mere existence of a scintilla of evidence in support of the non-moving party's position is insufficient. *Crowley Liner Servs., Inc. v. Transtainer Corp.*, No. 06-21995, 2007 WL 433352, at *3 (S.D. Fla. 2007).

"A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of Southeast*, 492 Fed. Appx. 16, 26 (11th Cir. 2012).

II. **Defendant Breached the Policy by Failing to Conduct an Adequate Adjustment and Investigation of Plaintiff's Hurricane Irma Claim**

    a. **Legal standard for breach of contract**

The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages. *E.g., Mettler, Inc. v. Ellen Tracy, Inc.*, 648 So.2d 253, 255 (Fla. 2d DCA 1994); *Abruzzo v. Haller*, 603 So.2d 1338 (Fla. 1st DCA 1992). Florida courts have long held that insurance statutes are incorporated by law into every insurance policy issued in this state. *See Citizens Ins. Corp. v. Barnes*, 124 So. 722, 723 (Fla. 1929); *see also Foundation Health v. Westside EKG Assocs.*, 944 So.2d 188, 194 (Fla. 2006); *St. Paul Fire & Marine Ins. Co. v. Valdivia*, 771

So.2d 1229 (Fla. 3d DCA 2000); *U.S. Fire Ins. Co. v. Southern Sec. Life Ins. Co.*, 710 So.2d 130 (Fla. 5th DCA 1998). As the Florida Supreme Court stated in *Grant v. State Farm Fire and Cas. Co.*:

> …where a contract of insurance is entered into on matters surrounded by statutory limitations and requirements, the parties are presumed to have entered in such agreement with references to the statute, **and the statutory provisions become a part of the contract**.

638 So.2d 936 (Fla. 1994) (Emphasis added). A breach of the statutory provision incorporated into the policy may form the basis of a breach of contract action. *Foundation Health*, 944 So.2d at 195.

### b. The Policy was in effect during Hurricane Irma

The parties do not dispute that the Policy was in full force and effect during Hurricane Irma on September 10, 2017. The Policy insured against all risks of direct physical loss or damage to Property, unless specifically excluded in the Policy, occurring during the policy period:

> **5. Loss or Damage Insured**
>
> This policy insures against All Risks of Direct Physical Loss or Damage Excluding Flood and Earth Movement, or as listed in the Declaration Page or Endorsements attached hereto, occurring during the policy period as defined in the declaration pages.

The Policy has a limit of liability in the amount of $9,016.622. Building 1 and Building 2 each have a limit of liability of $4,473,936, subject to a 3% hurricane deductible. SOF The damage to Plaintiff's Property was due to a hurricane loss, a covered peril under the Policy.

### c. Defendant Materially Breached the Policy

On September 10, 2017, Plaintiff's Property sustained significant damages as a result of Hurricane Irma. On September 12, 2017, Plaintiff timely notified Defendant of the loss and sought benefits under the Policy. SOF ¶ 5 and Exhibit "B". Upon being notified of the loss, Defendant retained Engle Martin & Associates ("EM") as its independent adjuster to investigate the damage to Plaintiff's Property. On October 13, 2017, Ruben Molinar of EM

T2397632.DOCX;1                                   4

inspected the Property. During the inspection, Mr. Molinar was informed that water entered the dwellings through openings in the roofs and the exterior walls as a result of Hurricane Irma's winds. At the time of Mr. Molinar's inspection, Plaintiff reported eighteen (18) condominium units that had suffered interior water damage. EM's photographs dated October 13, 2017, depict damage to the roofs, parapet walls, and sidings. SOF ¶ 6 and Exhibit "C".

On or about November 2, 2017, Defendant's adjuster, Vincent Cicci of EM, advised Plaintiff that Defendant would be engaging an engineer to determine causation and origin of water intrusion, and a building consultant to provide an estimate of damages. Further, EM advised Plaintiff of unsubstantiated exclusions under the Policy. EM stated that under "Endorsement No. 10- Wind Driven Rain Sublimit", that "Wind Driven Rain" was "Not Covered," however, EM did not explain that the endorsement was for expanded coverage of ensuing rain water damage, and Plaintiff did not need to show an opening to the exterior of the building. SOF ¶ 7 and Exhibit "D".

On November 6, 2017, Mr. Cicci contacted Plaintiff's public adjuster to schedule a re-inspection. Consequently, Andrew Peters of Young & Associates ("Y&A"), Defendant's building consultant, re-inspected the Property on November 13, 2017. Mr. Peters prepared an estimate dated February 28, 2018, well over three months after the date of his inspection. See **Exhibit "E".** Y&A's estimate provided a total replacement cost value of $85,004.83 for damages to dwelling under Coverage A. Plaintiff contends Y&A failed to account for significant wind damage to the roofs, mansards, interior water damage, code upgrades, and damage to several heating & air conditioning units. Defendant denied a portion of Plaintiff's claim because it allegedly fell below the Policy's hurricane deductible.

Defendant also retained Arthur C. Ashworth, P.E. of Madsen, Kneppers & Associates, Inc. ("MKA") to further inspect Plaintiff's Property and determine the extent of the damages sustained to the buildings' envelopes as a result of Hurricane Irma. Mr. Ashworth inspected the Property on November 14, 2017 and again on December 8, 2017 but misrepresented to Defendant that "by the time of his inspection the reported interior repairs had been completed." Actually, by the time Mr. Ashworth inspected, Plaintiff had mitigated the interior water damages and roof damages related to Hurricane Irma and made reasonable and necessary emergency repairs, not permanent repairs. See **Exhibit "F".**

Defendant's purported experts conducted a roof evaluation without employing proper methodology. MKA's opinions are based on visual observations and no testing was ever undertaken. MKA concluded as follows:

> We noted two areas of "spongy" roofing sheathing located near the northeast corner area of the building. One area is directly adjacent to the area drain that is depressed below the roof sheathing and the other section is closer to the center courtyard. In both cases, staining of the roofing indicates improper drainage of the roof resulting in long term water accumulation *(see Photographs 1- 3).*

**See Exhibit "F" at 5**.

Plaintiff asserts this conclusion is highly speculative because MKA failed to cut the areas to determine why it was "spongy". Further, if improper drainage of the roof resulted in long term water accumulation, then the roof would have been far "spongier" that the two areas observed by MKA. The "spongy" areas are an indication of recent moisture intrusion.

MKA's report also contains contradictory opinions. MKA concluded that "Although the siding is damaged, no penetrations were observed that would allow for wind driven rain or other water intrusion." See Exhibit "F" at 3-4. This is inaccurate because MKA observed numerous gouges and penetration. Later in its report, MKA admits that siding was displaced,

"There are several sections of the mansard aluminum siding that have been displaced. Tarps attached to the parapet wall are generally attached using drywall screws *(see Photographs 20 &21)."* See Exhibit "F" at 5.

MKA acknowledged damages to the roofs as a result of Hurricane Irma stating, "Open laps at tops of the parapet walls are due to deferred maintenance **exacerbated** by winds from Hurricane Irma…" See Exhibit "F" at 7. (Emphasis added.)

### d. Defendant's Improper Denial of Plaintiff's Covered Loss

Florida law requires Defendant to pay or deny Plaintiff's claim within ninety (90) days from the receipt of a claim pursuant to Fla. Stat. § 627.70131. The statute provides, in relevant part, the following:

> **Within 90 days after an insurer receives notice of an initial**, reopened, or supplemental **property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim** unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment. Any payment of an initial or supplemental claim or portion of such claim made 90 days after the insurer receives notice of the claim, or made more than 15 days after there are no longer factors beyond the control of the insurer which reasonably prevented such payment, whichever is later, bears interest at the rate set forth in s. 55.03. Interest begins to accrue from the date the insurer receives notice of the claim. The provisions of this subsection may not be waived, voided, or nullified by the terms of the insurance policy. If there is a right to prejudgment interest, the insured shall select whether to receive prejudgment interest or interest under this subsection. Interest is payable when the claim or portion of the claim is paid. Failure to comply with this subsection constitutes a violation of this code. However, failure to comply with this subsection does not form the sole basis for a private cause of action.

Emphasis added.

On or about November 30, 2017, Plaintiff's public adjuster sent correspondence to Defendant requesting payment of undisputed sums as the claim had been open longer than 30 days. See **Exhibit "G".** In response to Plaintiff's request for assistance and undisputed sums, on December 7, 2017, EM stated that it had not received Plaintiff's estimate of damages and

issued a "formal request" for the insured's "estimate/claim". See **Exhibit H**. On December 13, 2017, Plaintiff's public adjuster submitted his estimate and Plaintiff's signed proof of loss. See **Exhibit "I".**

On February 22, 2018, Plaintiff's counsel sent a letter of representation to Defendant demanding a certified copy of the policy, estimates, reports, photographs, correspondence, and other documents and information relied upon by Defendant in its determination of whether or not to issue insurance proceeds to Plaintiff. See **Exhibit "K".** On March 13, 2018, Plaintiff's counsel contacted Defendant to discuss its request for a re-inspection of the interior units and any outstanding requests for information needed to conclude Defendant's investigation. See **Exhibit "L".** Having received no reply from Defendant, on April 6, 2018, Plaintiff's attorneys again followed up with Defendant regarding any outstanding requests and requested a timeframe for Defendant's reports. See **Exhibit "L".**

On April 18, 2018, Plaintiff made a second follow-up request. Plaintiff did not receive a timely response from Defendant to either its April 6, 2018 and April 18, 2018 requests for information and status of its claim. On April 23, 2018, after waiting for an unreasonable amount of time for a coverage determination, despite receiving its consultants' reports as early as January 2018, Defendant informed Plaintiff that it would not be tendering any insurance proceeds under the Policy. See **Exhibit "N"** at 2.

Defendant has made no showing that failure to timely pay or deny Plaintiff's insurance claim for benefits was due to factors beyond Defendant's control. Defendant's violation of Fla. Stat. § 627.70131, failure to pay and effective denial of Plaintiff's covered losses, are in breach of its express contractual obligations. Plaintiff further contends that Defendant breached the Policy

when it improperly adjusted Plaintiff's claim in violation of Fla. Stat. § 626.9541(1)(i)(2) because in the same April 23, 2018 letter, Defendant stated:

> **Please note that MKA did confirm that the balcony shingled roofs, aluminum siding and lap joints at the parapets did sustain physical damage due to wind. We have also confirmed damage to several heating & air conditioning units. YA is in the process of quantifying the repair cost for same. Upon receipt of their estimate, we will forward it to your attention.**

See *id.* at 11. (Emphasis added.)

The damages missing in MKA's estimate evidences Defendant's adjustment of Plaintiff's claim on less favorable terms than those contemplated in Plaintiff's Policy. Defendant further evidenced its failure to honor its contractual obligations by improperly imposing unfounded obligations upon Plaintiff by insisting that Plaintiff "prove" its claim within 60 days:

> The Company would like to emphasize that as to date you have failed to prove some of the claimed damage, specifically interior water damage…Please forward an itemized estimate for interior repairs, to include a breakdown by category for each unit within the next sixty (60) days. Additionally, we are requesting you provide any and all documentation that will substantiate the claimed interior water damage, including but not limited to post loss photos, receipts, invoices, proposals, notes, estimates, mitigation reports, drying logs and diagrams. Once received MKA and YA will require access to the affected units to determine the cause of the water intrusion as well as prepare an estimate for any potentially covered repairs."

Due to Defendant's inadequate investigation and adjustment of Plaintiff's claim, Plaintiff was forced to retain Southern Restoration Services, LLC ("Southern Restoration") and Roof Leak Detection Company, Inc. ("Roof Leak") to properly investigate and evaluate its Hurricane Irma related damages as a result of Defendant's failure and refusal to do so. Plaintiff contacted Defendant providing available dates for the re-inspections and encouraged Defendant to attending a joint re-inspection with Plaintiff's experts. See **Exhibit "O" and "P".**

Defendant again refused to re-inspect prior to obtaining expert reports from Plaintiff. On July 17, 2018, in response to Plaintiff's request for a joint re-inspection, Defendant requested

T2397632.DOCX;1                                                   9

that Plaintiff submit an executed Sworn Statement in Proof of Loss ("POL") within 60 days, as well as documentation pertaining to Plaintiff's interior water damages as a result of Hurricane Irma. Plaintiff made every effort to assist Defendant in properly evaluating its Hurricane Irma claim, including timely submitting its proof of loss form and providing Roof Leak's roof evaluation report and Southern Restoration's estimate.

On October 17, 2018, Plaintiff filed a breach of contract action in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida. [D.E 10]. On November 16, 2018, well over a year since Hurricane Irma and despite ample opportunity to re-inspect, Defendant alleged that its investigation stalled due to Plaintiff's failure to provide the requested information and that Defendant was unable to proceed with a re-inspection of Plaintiff's Property to confirm the claimed damage. Defendant's conduct in shifting its obligation and imposing improper requirements on Plaintiff, is a direct result of its delay and avoidance in its investigation and payment of the claim and the failure of Defendant to timely and adequality evaluate Plaintiff's claim.

Plaintiff continued to supplement its claim and on December 11, 2018, Plaintiff again encouraged Defendant to re-inspect the Property and provided additional documentation. Despite Plaintiff's estimate, reports, photographs, invoices, etc. Defendant failed to acknowledge and account for the Hurricane Irma related damages to Plaintiff's exterior and interior of the dwellings. **See Exhibit "R".**

Plaintiff has demonstrated each of the essential elements of its breach of contract claim by a preponderance of the evidence. Accordingly, Plaintiff's Motion for Partial Summary Judgment as to Defendant's liability for breach of insurance contract should be granted.

### III. Defendant's Affirmative Defenses Fail as A Matter of Law and Must Be Stricken and/or Dismissed

#### a. Legal Standard on Affirmative Defenses

Partial summary judgment in Plaintiff's favor is appropriate with respect to Defendant's Affirmative Defenses. As with summary judgment on affirmative claims, summary judgment dismissing affirmative defenses is warranted when the moving party has shown that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Tello v. Dean Witter Reynolds, Inc.*, 410 F. 3d 1275, 1292 (11th Cir. 2005); *see also Regions Bank v. Old Jupiter, LLC*, 2010 WL 5148467, *5 (S.D. Fla. 2010). A defense is insufficient as a matter of law if, on the face of the pleadings, it is patently frivolous, or if it is clearly invalid as a matter of law. *See Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1318 (S.D. Fla. 2005).

Further, an affirmative defense is insufficient as a matter of law, and summary judgment should be granted, when it appears that a defendant's affirmative defense cannot succeed under any set of facts which it could prove. *See Sussman v. Weintraub*, 2007 WL 908280, *8 (S.D. Fla. 2007) (citing *EEOC v. First Nat'l Bank of Jackson*, 614 F. 2d 1004, 1008 (11th Cir. 1980)). Partial summary judgment may be used to dispose of affirmative defenses. *International Ship Repair and Marine Services, Inc. v. St. Paul Fire and Marine Ins. Co.,* 944 F. Supp. 886 (M.D. Fla. 1996). As discussed below, Defendants' affirmative defenses are legally or factually deficient and thus, should be dismissed because none preclude summary judgment as a matter of law.

#### b. First Affirmative Defense

Defendant's First Affirmative Defense alleges that Plaintiff violated the Policy's Duties of the Named Insured in the Event of Loss or Damage. As discussed *supra,* Plaintiff has diligently assisted Defendant in the investigation of Plaintiff's claim and has provided all the

information Defendant needed to issue policy proceeds and benefits due and owing to Plaintiff. Defendant's 30(b)(6) Corporate Representative testified that Plaintiff did not violate any Policy requirement to "give company immediate notice of loss or damage including a description of the property involved:

> Q   So the notice of loss that -- the fact that a notice of loss was given, Rockhill would agree that there was no violation of the policy regarding a notice of loss being given; correct?
>
> A   That's correct.

See **Exhibit "S"** Deposition Transcript of Sherri King ("King Dep. Tr.") at 43:24- 44:3. Further, Florida Statute §627.70132 requires notice of a loss or damage caused by the peril of windstorm or hurricane within 3 years after the hurricane first made landfall or the windstorm caused the covered damage. Plaintiff provided notice to Defendant well before the deadline imposed by Florida law.

As to the requirement to "give a description of the property involved", Ms. King testified, "Well, they [Plaintiff] told us I think originally that there were only three units involved, and then later we were told there was 18 units involved in the loss." Exhibit "S", King Dep. Tr. at 44:8-15. This is not true because by letter dated November 2, 2017, EM admitted that "During our inspection [October 13, 2017], you reported that the roof siding, fencing and landscaping were all damaged by wind. You also reported water damage to 18 residential condominium units."

Additionally, Affirmative Defense No. 1 fails to include any facts in support of the actual Policy provisions. Furthermore, if Defendant is alleging that Plaintiff failed to perform a condition precedent, then this affirmative defense is not pled with the requisite amount of

specificity to comport with Federal Rule of Civil Procedure 9(c). Plaintiff is left guessing as to how it may have failed to comply with an alleged condition precedent to recovery under the Policy, or how the claim may otherwise be excluded.

### c. Second, Third, Fifth, Sixth, Seventh and Eighth Affirmative Defenses

*Second Affirmative Defense*
"Rockhill asserts that all or part of the damage is excluded under the Policy's Wear and Tear Exclusion…"

*Third Affirmative Defense*
"Rockhill asserts that all or part of the damage is excluded under the Policy's Faulty Workmanship Exclusion…"

*Fifth Affirmative Defense*
"Rockhill asserts that any and all damage caused by or resulting from Wind Driven Rain is not covered under the Policy…"

*Sixth Affirmative Defense*
"Rockhill asserts that part of the damage is not covered under the terms of the Policy. In particular the Policy limits coverage for property within condominium units…"

*Seventh Affirmative Defense*
"Rockhill asserts that all or part of the claimed damage is excluded under the Policy's Faulty Maintenance Construction and Repair Exclusion…"

*Eighth Affirmative Defense:*
"Rockhill asserts that all or part of the claimed damage is excluded and/or limited under the Policy's Mold Provision…"

These Affirmative Defenses are all exclusions in the Policy and Defendant, as the insurance company, bears the burden of establishing that any matter falls within the exclusionary provisions of the policy. An all-risks policy provides coverage for "all losses not resulting from misconduct or fraud unless the policy contains a specific provision expressly excluding the loss from coverage." *Mejia v. Citizens Prop. Ins. Corp.,* 161 So. 3d 576, 578 (Fla. 2d DCA 2014) citing *Hudson v. Prudential Prop. & Cas. Ins. Co.,* 450 So.2d 565,568 (Fla. 2d DCA 1984) (contrasting an all-risks policy from a specific peril policy which insures only against named

risks). An insured claiming under an all-risks policy has the burden of proving that the insured property suffered a loss while the policy was in effect. The burden then shifts to the insurer to prove that the cause of the loss was excluded from coverage under the policy's terms. *Id.* Defendant cannot meet this burden.

### d. Fourth Affirmative Defense

Defendant's Fourth Affirmative Defense alleges, in part, "…all or part of the claim damage occurred prior to the effective date of the Policy and is therefore not covered under the Policy."

This defense also fails to include any facts in support of the actual Policy provisions. Defendant's 30(b)(6) Corporate Representative, Sherri King, testified she did not know whether Defendant performed any condition surveys of the Property before the loss. Exhibit "S", King Dep. Tr. at 134:24-135:2. Ms. King further testified that EM's adjusters did not have access to Defendant's underwriting files, and they did not make a request to see the underwriting files as part of their full investigation of this claim. Exhibit "S", King Dep. Tr. at 29:8-25.

However, Ms. King testified that if she wanted to look at the underwriting file that Defendant maintains regarding Plaintiff, that all she has to do is reach out to support staff. Exhibit "S", King Dep. Tr. at 28:1-24.

Ms. King's testimony revealed that a third party, R-T Specialty, LLC does the underwriting for the selection of risks such as Plaintiff's insured Property. Exhibit "N", King Dep. Tr. at 27: 12-18. Further, Ms. King testified the Plaintiffs Policy was underwritten by R-T Specialty, LLC. Exhibit "N", King Dep. Tr. at 97:10-12.

## **CONCLUSION**

Based on the foregoing, Plaintiff respectfully requests this Court enter an Order granting partial summary judgment in Plaintiff's favor as to Defendant's breach of the Policy and the Affirmative Defenses raised by Defendant numbered 1 through 8.

Respectfully submitted this December 9th day of December 2019.

                **MERLIN LAW GROUP, P.A.**

*/s/ Eriselda Kuhn*
**WILLIAM F. MERLIN, JR., ESQUIRE**
Florida Bar Number: 364721
**ERISELDA KUHN, ESQUIRE**
Florida Bar Number: 1003031
**SHANE S. SMITH, ESQUIRE**
Florida Bar Number: 53130
MERLIN LAW GROUP, P.A.
777 S. Harbour Island Blvd., Suite 950
Tampa, Florida 33602
Telephone: (813) 229-1000
Fax: (813) 229-3692
Attorneys for Plaintiff
wmerlin@merlinlawgroup.com
ikuhn@merlinlawgroup.com
ssmith@merlinlawgroup.com
rbradley@merlinlawgroup.cm