UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE No.: 9-19-CV-80111-BLOOM/Reinhart

CENTRE HILL COURTS
CONDOMINIUM ASSOCIATION, INC.

 Plaintiff,

vs.

ROCKHILL INSURANCE COMPANY,

 Defendant.
_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION IN LIMINE TO EXCLUDE EVIDENCE AND TESTIMONY RELATING TO "RESERVES," BAD FAITH, CONDUIT TESTIMONY, OTHER CLAIMS PRESENTED, AND DOCUMENTS NOT PROVIDED PRIOR TO SUIT**

Plaintiff CENTRE HILL COURTS CONDOMINIUM ASSOCIATION, INC. ("Plaintiff"), by and through undersigned counsel, pursuant to the Federal Rules of Civil Procedure, the Federal Rules of Evidence, this Court's Amended Scheduling Order dated October 22, 2019 [D.E. 58], and Local Rule 7.1, files its Response in Opposition to Defendant's Motion in Limine to Exclude Evidence and Testimony Relating to "Reserves," Bad Faith, Conduit Testimony, Other Claims Presented, and Documents Not Provided Prior to Suit [D.E. 69] ("Motion")*,* and in support thereof, states as follows:

**FACTUAL AND PROCEDURAL BACKGROUND**

1. This is an action by Plaintiff, a condominium association, against Defendant for recovery of proceeds and benefits owed under Plaintiff's insurance policy for damages to its property located at 825 & 875 NW 13th Street, Boca Raton, FL 33486 (the "Property"), as a result of Hurricane Irma. First Amended Complaint, [D.E. 10-1] at ¶ 1.

1

2. Plaintiff timely reported the loss to Defendant and sought benefits due and owing under the policy Defendant issued to Plaintiff covering the Property.

3. On October 13, 2017, Defendant's field adjuster inspected Plaintiff's Property. During the inspection, Plaintiff reported eighteen (18) interior units that suffered damage as a result of Hurricane Irma.

4. On or about November 6, 2017, Defendant requested to re-inspect Plaintiff's Property. Plaintiff again made the Property available and on November 13, 2017, Andrew Peters of Young & Associates ("Y&A") re-inspected the Property and prepared a repair estimate dated February 28, 2018.

5. Defendant also advised Plaintiff that it had retained Arthur C. Ashworth, P.E. of Madsen, Kneppers & Associates, Inc. ("MKA") to determine the extent of the damages sustained to the buildings' envelopes as a result of Hurricane Irma. Plaintiff promptly coordinate the re-inspection and Mr. Ashworth re-inspected the Property on November 14, 2017, and December 8, 2017. Mr. Ashworth prepared a report dated January 9, 2018.

6. After Defendant's several inspections of Plaintiff's Property, on November 30, 2017, Plaintiff, through its public adjuster, contacted Defendant regarding the status of its claim and requested undisputed benefits due and owing under the policy.

7. On December 7, 2017, Defendant responded that it had not received Plaintiff's estimate of damages and issued a "formal request" for Plaintiff's "estimate/claim." It is Plaintiff's position that Defendant's conduct in shifting its obligation and imposing improper requirements on Plaintiff, is a direct result of its delay and avoidance in its investigation and payment of the claim and the failure of Defendant to timely and adequately evaluate Plaintiff's claim.

8. On or about December 13, 2017, Plaintiff's public adjuster submitted a repair estimate and a Sworn Statement in Proof of Loss ("POL"). However, on December 22, 2017, Defendant rejected Plaintiff's POL stating in relevant part:

> Although, we did not request it, nor provide you with a form on this claim, we received your signed notarized proof of loss via email on December 13, 2017 claiming $2,286,667.69 in damages. We can neither accept nor reject your proof of loss at this time as our investigation is not complete.

See **Exhibit "A"**.

9. Notwithstanding Defendant's several inspections of Plaintiff's Property, on or about March 13, 2018, Plaintiff contacted Defendant to discuss its request for yet another re-inspection of the interior areas and any outstanding request for information to assist Defendant in the adjustment of Plaintiff's claim, receiving no timely reply. See **Exhibit "B"**.

10. On April 6, 2018, Plaintiff again contacted Defendant requesting a status of its claim and plead for insurance proceeds and benefits due and owing under the insurance policy. *Id*.

11. Having no communication with Defendant, on April 18, 2018, Plaintiff followed up a second time and requested the same claim information. Defendant did not timely respond to Plaintiff's April 6, 2018 and April 18, 2018 requests for information and status of its claim. *Id.*

12. Without any further investigation, on or about April 23, 2018, nearly six months after Hurricane Irma, Defendant advised Plaintiff of its coverage position and informed Plaintiff that it would not be tendering any insurance proceeds under the policy. See **Exhibit "C"**.

13. Defendant further evidenced its failure to honor its contractual obligations by improperly imposing unfounded obligations upon Plaintiff and by insisting that Plaintiff "prove" its claim. See *Id.* at 2.

14. Due to Defendant's unreasonable position that Plaintiff is obligated to "prove" its

3

claim at that time, Plaintiff was forced to retain Southern Restoration Services, LLC ("Southern Restoration") to determine the cost of reasonable and necessary repairs to return the Property to its pre-loss condition and Roof Leak Detection Company, Inc. ("Roof Leak") to properly investigate and evaluate Plaintiff's Hurricane Irma related damages.

15. Plaintiff contacted Defendant and provided available dates for re-inspection and encouraged Defendant to attend a joint re-inspection with Plaintiff's consultants. However, Defendant refused to re-inspect the Property prior to obtaining Plaintiff's experts' reports.

16. On or about July 17, 2018, in response to Plaintiff's request for a joint re-inspection, Defendant requested that Plaintiff submit an executed POL within sixty (60) days and documentation relating to Plaintiff's interior water damage.

17. Under the policy, the POL form is to be provided by Defendant. Defendant ignored Plaintiff's several requests and failed to provide the necessary POL forms and instruction to Plaintiff as required by the policy until September 25, 2018, further delaying the adjustment of Plaintiff's claim.

18. Plaintiff has made every effort to assist Defendant in properly evaluating its Hurricane Irma claim, including timely submitting its POL and providing its experts' reports prior to filing the instant action. Defendant has continued to ignore evidence that would support Plaintiff's claim for insurance benefits under the policy.

19. On December 11, 2018, Plaintiff again requested Defendant's consultants' availability to coordinate the re-inspection, receiving no timely reply. See **Exhibit "D".**

20. Nearly three months later, on March 8, 2019, Defendant responded to Plaintiff's December 11, 2018 letter and informed Plaintiff of its intention to proceed with a joint re-inspection, which took place on April 23, 2019. See **Exhibit "E".**

21. Defendant alleges that Plaintiff precluded Defendant's consultants from promptly completing their investigation by denying access to the interior. Defendant further alleges that "by the time Plaintiff finally provided access…significant time had passed since the date of loss, and Plaintiff has already engaged in repair work, altering the condition of the property." [D.E. 69 at 3, ¶ 8].

22. Defendant's allegations are unsubstantiated because Plaintiff cooperated with all reasonable and relevant requests made by Defendant in the investigation of Plaintiff's Hurricane Irma loss. Defendant's consultants re-inspected Plaintiff's Property, including, but not limited, to flat roofs, interior and exterior of the dwellings, on October 13, 2017, November 13, 2017, November 14, 2017, December 8, 2017, April 23, 2019 and August 2, 2019. Moreover, as discussed *supra*, Defendant refused to re-inspect Plaintiff's Property prior to April 23, 2019, and Defendant knew or should have known that it was necessary for Plaintiff to complete reasonable and necessary repairs to the Property.

23. Defendant's Motion seeking to prohibit Plaintiff from presenting evidence and testimony relating to "Reserves," Bad Faith, Conduit Testimony, Other Claims Presented, and Documents Not Provided Prior to Suit should be denied because as set forth more fully below, the evidence that Defendant seeks to exclude is highly relevant.

## MEMORANDUM OF LAW

### I. Legal Standard

"A Motion In Limine presents a pretrial issue of admissibility of evidence that is likely to arise at trial, and as such, the order, like any interlocutory order, *remains subject to reconsideration by the court throughout the trial.*" *Stewart v. Hooters of Am., Inc.,* No. 804-cv-40-T-17-MAP, 2007 WL 1752843, at *1 (M.D. Fla. June 18, 2007) (original emphasis). "The

real purpose of a motion in limine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably effect the fairness of the trial." *Id.* "The Court excludes evidence on a Motion In Limine only if the evidence is clearly inadmissible for any purposes." *Id.; see also Morejon v. Louisville Ladder, Inc.,* No. 17-22558-CIV-O'SULLIVAN, 2018 WL 1505562, at *2 (S.D. Fla. Mar. 27, 2018). However, as a general rule, "[motions] in limine are disfavored [and] admissibility questions should be ruled upon as they arise at trial." *Regions Bank v. Kaplan,* 8:12-CV-1837-T-17MAP, 2016 WL 2587927, at *1 (M.D. Fla. Apr. 29, 2016). In short, "if evidence is not clearly inadmissible, evidentiary rulings must be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context." *Id.* A motion in limine is not the proper vehicle to resolve substantive issues, to test issues of law, or to address or narrow the issues to be tried. *See Royal Indem. Co. v. Liberty Mut. Fire Ins. Co.,* No. 07-80172-CIV, 2008 WL 2323900, at *1 (S.D. Fla. June 5, 2008).

Federal Rule of Evidence 402 states that "all relevant evidence is admissible." Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without evidence. *See U.S. Beiter,* 448 Fed. Appx. 900, 901 (11th Cir. 2011) (citing Fed. R. Evid. 401)). "However, as Rule 403 provides, relevant evidence 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.'". *Id.* Importantly, however "'unfair prejudice' as used in Rule 403 is not to be equated with testimony simply adverse to the opposing party. Virtually all evidence is prejudicial or it isn't material. The prejudice must be 'unfair.'" *See Dollar v. Long Mfg., N.C., Inc.,* 561 F.2d 613, 618 (5th Cir. 1977).

The use of Rule 403 to exclude relevant evidence is an "extraordinary remedy" whose "major function...is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *United States v. Grant,* 256 F.3d 1146, 1155 (11th Cir. 2001); *United States v. Freeman,* No. 09-80104-CR, 2010 WL 989227, at *10 (S.D. Fla. Mar. 16, 2010) ("Exclusion of otherwise admissible evidence is an extraordinary remedy which the district court should invoke sparingly.").

Courts often deny Motions *in Limine* as vague where the party does not point to any specific evidence or testimony subject to exclusion. *Hockensmith v. Ford Motor Co.*, 2003 U.S. Dist. LEXIS 27528, at *29-30 (N.D. Ga. Apr. 17, 2003) (Defendant fails to identify any specific witness or testimony it seeks to exclude. Therefore...the court finds the motion is too vague and overbroad.); *United States Bank Nat'l Ass'n, N.D. v. Tompkins & Somma LLC*, 2011 U.S. Dist. LEXIS 163874 (N.D. Ala. Dec. 21, 2011); *Equity Lifestyle Props. v. Fla. Mowing & Landscape Serv.*, 2006 U.S. Dist. LEXIS 22329, at *6 (M.D. Fla. Apr. 24, 2006) ("It is unclear, however, what evidence Florida Mowing refers to; the motion in limine is simply too vague for the Court to make a ruling excluding evidence.").

**II.     Evidence Related to Reserves is Relevant and Should be Admissible**

The reserves in this case are relevant for multiple reasons. First, reserves are relevant because after Defendant's first inspection, Defendant set a reserve that was higher than the deductible. Thus, the fact that Defendant (a) did not conduct another inspection to verify the damage until months later, and (b) did not pay the amounts owed, reserves in this case are relevant to Defendant's breach of the policy. As a result of Defendant's field adjuster's inspection and recommendation, reserves were set in this claim.

Second, reserves are relevant to Defendant's claim that Plaintiff's claim fell below the

policy's deductible. Specifically, as pointed out by Defendant, reserves are "estimates," and because reserves are estimates, the reserves set in this case are clearly relevant to refute Defendant's conclusory statement that the damages were below the deductible at the time Defendant's consultants inspected the Property. At the very least, the reserves are relevant for impeachment purposes of Defendant's claims examiners and witnesses who will testify at trial to the initial inspections.

Third, reserves are relevant for the jury to determine the type of investigation that Defendant's independent adjusters and Defendant generally, performed from the date of loss until April 23, 2018 when Defendant denied Plaintiff's claim for damages. As set forth above, reserves are relevant in this case, and support Plaintiff's position that a breach took place. Defendant has failed to explain how evidence or testimony of reserves at trial would be prejudicial. Instead, Defendant suggests that generally, "introduction of such evidence would be overly misleading and prejudicial to Rockhill." See [D.E. 69, at 3, ¶11]. Defendant's Motion is based solely on its attorney's argument without any factual development supported by deposition testimony or any other evidence and is, therefore, plainly premature. *See Yager v. Empress Casino Hammond Corp.,* No. 97 C 3483, 1998 WL 67612, *1, 2 (N.D. Ill. Feb 9, 1981).

A passing reference to other cases, is wholly insufficient. Because Defendant has failed to show otherwise, evidence of reserves will not be prejudicial to Defendant at trial.

**III.    Defendant's Assertion that Certain Evidence is Related Solely to Bad Faith is Without Merit for Various Reasons**

Defendant asks the Court to preclude "information concerning how the claim was handled and whether it was handled properly. . . suggesting Plaintiff intends to raise issues concerning bad faith conduct." [D.E. 69 at 3, ¶12.] Defendant's challenge is very general and overbroad because it ignores that the parties' actions post-loss are essential in evaluating the

breach of contract. Showing Defendant's failure to properly adjust and timely pay the loss is a part of the case to be tried.

A closer look at Defendant's Motion demonstrates that what Defendant is truly seeking is to prevent Plaintiff from presenting any evidence regarding the handling of its particular claim and the facts which surround how Defendant allegedly failed to meet its duties under the insurance contract, particularly those which are not favorable to Defendant. Moreover, even assuming that some evidence may relate to bad-faith, that is not a per se reason to exclude evidence that is relevant to other issues in this litigation by Defendant. *Buckley Towers Condominium, Inc., v. QBE Ins. Corp.*, No. 07-22988-CIV, 2008 WL 5505415 (S.D. Fla. Oct. 21, 2008) is instructive as to how certain evidence, even if relevant to bad faith, may also be relevant and admissible in a breach of contract action.

Defendant should be prohibited from placing Plaintiff's conduct during the loss-adjustment period directly at issue, alleging that Plaintiff's actions were improper, and then seek to exclude evidence relating to Defendant's own failure to comply with its contractual obligations under the policy. Defendant's attempt to lump all evidence and testimony about claims handling and industry standard into the category of "bad faith" is meritless for the purposes of a motion in limine. See *Buckley Towers*, at *6 ("Again, the blanket attempt to preclude any mention of these issues is <u>meritless</u> on a motion in limine.").

Moreover, Plaintiff has never claimed that this a statutory first-party action under Fla. Stat. § 624.155. Plaintiff intends to present evidence pertaining to the damages and adjustment of Plaintiff's loss only, in support of its allegation that Defendant breached the subject insurance policy. Plaintiff has no intention of arguing and/or presenting evidence at trial concerning Defendant's "bad faith" general claims handling and/or business practices, so long as Defendant

is similarly prohibited from making any reference or presenting any evidence regarding having proper or "good faith" claims handling and/or business practices.

In the context of a first-party property insurance dispute, Florida law recognizes that a breach of contract action and a statutory action pursuant to Fla. Stat §624.155 (commonly referred to as a "bad faith" action) involve separate issues. Generally speaking, the issues in a breach of contract action are (1) whether the insurer had a duty under the insurance contract to pay for a loss, and (2) whether the insurer breached that duty by either denying coverage and/or failing to pay the full amount owed under the policy. In a statutory action brought under Fla. Stat. §624.155, the issue is an insurer's civil liability for, *inter alia*, (1) committing any one of enumerated unfair claim settlement practices listed in Fla. Stat. §626.9451(1)(1) and/or (2) for "[n]ot attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests." See §624.155(1)(a)(1), Fla. Stat.; §624.155(1)(b)(1), Fla. Stat.; see also, *Allstate Indem. Co. v. Ruiz*, 899 So. 2d 1121, 1124 (Fla. 2005).

An action against an insurer under Section 624.155 cannot proceed simultaneously with a breach of contract action. *Blanchard v. State Farm Mut. Auto. Ins*. Co., 575 So. 2d 1289, 1291 (Fla. 1991). This is because an insurer cannot be found liable for having acted in bad faith unless it is first established that the insured was entitled to benefits the policy. *Id*. As such, if a breach of contract and bad faith claim are brought in the same action, the trial court should abate the latter until the former is resolved. *State Farm Mut. Auto. Ins. Co. v. Tranchese*, 49 So. 3d 809, 810 (Fla. 4th DCA 2010) (*citing Ruiz*, 899 So. 2d 1121).

The vast majority of the case law cited by Defendant in its Motion concern this specific issue; i.e., that a statutory bad faith action is premature until there is a determination of liability

and extend of damages owed on the insurance contract. See [D.E. 69 at 7-8]. see also, e.g., *Hartford Ins. Co. v. Mainstream Const. Group, Inc.*, 864 So. 2d 1270 (Fla. 5th DCA 2004)(action seeking declaratory relief, damages for breach of contract, damages for alleged bad faith dealings, and damages unfair claim settlement practices); *Gen. Star Indem. Co. v. Anheuser-Busch Companies, Inc.,* 741 So. 2d 1259, 1260 (Fla. 5th DCA 1999)(breach of contract action and breach of duty of good faith brought in same action).

Defendant also cites *Hartford Ins. Co. v. Mainstream Const. Group*, Inc., 864 So. 2d 1270 (Fla. 5th DCA 2004), which involved a suit where the insured sought declaratory relief, damages for breach of contract, damages for alleged bad faith dealings in violation of §624.155(1)(b)(1), and unfair claim settlement practices in violation of §626.9541(1)(1). *Id.* at 1271. The issue before the court was therefore "whether Mainstream should be permitted to litigate these claims before coverage is determined, or whether the claims for violation of section 626.9541(1)(1) are also premature." *Id*. at 1272. The court answered the question in the affirmative, and explained:

> If there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim. Similarly, if there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices.

*Id.* at 1272.

However, unlike the cases cited by Defendant including *Mainstream Const. Group, Inc.,* Plaintiff's complaint alleges only counts for breach of contract and declaratory relief. Because a claim for breach of contract and a civil liability under either §624.155(1)(b)(1) or §626.9541(1)(1) have not been alleged in the same suit, the legal authority which Defendant claims support its Motion is simply inapplicable in this matter.

IV.     **This Court Should Withhold Ruling on Conduit Testimony Until Trial**

Federal Rule of Evidence 703 provides that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

The Eleventh Circuit has held that pursuant to this rule, "an expert witness may base his testimony on inadmissible information so long as such information is regularly relied upon by experts in his field." *U.S. v. Winston*, 372 Fed. App'x. 17, 20, (11th Cir. 2010)(unpublished); *accord Broussard v. Maples*, 535 Fed. App'x. 825, 828 (11th Cir. 2013)(unpublished); *U.S. v. Steed*, 548 F.3d 961, 975 (11th Cir. 2008); *In re Wright Medical Technology Inc., Conserve Hip Implant Products Liability Litigation*, 127 F.Supp.3d 1306, 1320 (N.D. Ga. 2015).

Defendant cites Rule 703 and Second Circuit case law for the proposition that the testimony of an expert "may not be merely used as a conduit for the introduction of the otherwise inadmissible evidence." Defendant generally contends in its Motion that it "has reason to believe, and expects, that Plaintiff will attempt to elicit testimony from its fact and expert witnesses that relies upon hearsay, thereby attempting to present to the Court and jury otherwise inadmissible evidence. . ." and those witnesses "would serve solely as conduits to admit the hearsay." [D.E. 69 at 3, ¶ 13].

At this time, it would be improper and premature for this Court to rule on any of Plaintiff's fact or expert witnesses' ability to testify about statements by other witnesses, because, at trial, the probative value of those conversations may substantially outweigh any prejudicial effect. *See e.g., Ramirez v. E.I Dupont De Nemours and Co.,* No. 8:09-cv-321-T-33TBM, 2010 WL 3516103 (M.D. Fla. Sep. 3, 2010) (denying motion in limine seeking to

exclude statements from non-testifying witnesses, and electing to assess hearsay considerations during the trial of the case).

With these principles in mind, to the extent that Defendant seeks to exclude inadmissible evidence, Plaintiff has no objection. However, application of the evidentiary rules should not be decided in a vacuum, and any objection to hearsay should be made at trial. *See United States v. Gonzalez*, 718 F. Supp. 1341, 1345 (S.D. Fla. 2010). The Court should defer ruling until trial.

## V.    Other Claim Presented

Defendant states Plaintiff presented an insurance claim to Defendant in excess of $1,748,325.53. [D.E. 69 at 8]. Defendant then asserts "because Plaintiff previously stated the value and nature of its claim upon which Rockhill was entitled to rely, Plaintiff should be precluded from presenting evidence differing from the claim previously presented." *Id.* at 9. Defendant attempts to prevent Plaintiff from seeking damages of what it had originally claimed on its POL, notwithstanding that Plaintiff's subsequent POL is not in excess of the contractual damages originally sought.

This argument also ignores the fact that on December 22, 2017, Defendant rejected Plaintiff's original POL for $2,286,667.69 and repair estimate. See Exhibit "A". Defendant alleged that Plaintiff "failed to prove some of the claimed damage, specifically interior water damage." See Exhibit B at 2. Defendant then requested that Plaintiff "forward an itemized estimate for interior repairs, to include a breakdown category for each unit… and any and all documentation that will substantiate the claimed interior water damage." *Id.* Defendant further refused to re-inspect Plaintiff's affected units to determine the cause of the water intrusion as well as prepare an estimate for any covered damages until its consultants received Plaintiff's itemized estimate demanded by Defendant. *Id.*

Due to Defendant's unsubstantiated position, Plaintiff was forced to retain Southern Restoration to prepare a repair estimate and Roof Leak to properly investigate and evaluate Plaintiff's Hurricane Irma related damages. Roof Leak performed a roof moisture survey and concluded that the damages observed to each evaluated structure were consistent with being a direct result of Hurricane Irma. Southern Restoration prepared an estimate for reasonable and necessary repairs to the Property to be in the amount of $1,748,325.53 replacement cost value. Plaintiff cooperated with Defendant's requests and provided all the information available to Plaintiff to aid Defendant in adjustment and investigation of its claim, including timely submitting a POL and a revised itemized estimate dated August 17, 2018, which included a breakdown category for each unit. Defendant should be prohibited from invoking conditions under the policy and then rejecting evidence that establishes that Plaintiff suffered a covered loss exceeding the policy's deductible.

Moreover, pursuant to the Court's Scheduling Orders regarding disclosure of expert reports and witnesses, Plaintiff submitted to Defendant its Expert Disclosures on September 24, 2019 and Rebuttal Expert Disclosures on October 8, 2019. Thus, Defendant's argument that Plaintiff should be precluded from relying on Southern Restoration's estimate regarding the damages being claimed, including the cost of repairs for the flat roofs, the cost of replacement of the mansard siding, and the cost for mitigation and interior repair damages to Plaintiff's Property as a result of Hurricane Irma is meritless. To hold Plaintiff to the amount claimed in its POL, is both contrary to the mandates of supplementing and updating discovery as required by Fed R. Civ. Pro. 26(e) and inequitable. By its very nature, discovery is meant to obtain more accurate information for trial than was available prior to filing a lawsuit. Accordingly, Defendant's Motion should be denied.

**VI.     All Documents Not Previously Presented Pre-Suit**

Defendant alleges that, upon a cursory review before Plaintiff's 30(b)(6) Corporate Representative's deposition, which took place on December 6, 2019, Plaintiff's document production appeared to be deficient. [D.E. 69 at 4, ¶¶ 17-18]. Therefore, Defendant seeks to prohibit Plaintiff from introducing any documentation and/or testimony not provided to Defendant prior to suit being filed. *Id.* at ¶ 19. Defendant's argument is meritless and for the reasons stated below the Court should deny Defendant's Motion.

First, the rules provide that "[r]elevant evidence is admissible unless" the Constitution, federal statute, the rules of evidence, or rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 402. Irrelevant evidence is inadmissible. *Id.* Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the "fact is of consequence in determining the action." Fed. R. Evid. 401.

Defendant cites no authority for the proposition that Plaintiff cannot use at trial "any information related to the claim not previously presented before filing suit, even if relevant. . ." [D.E. 69 at 9.] Plaintiff's evidence after suit is admissible to prove that Defendant failed in its duty to pay all policy benefits due and owing under the insurance policy and is relevant to the core issues to be presented to the jury.

Second, this Court's original Order Setting Trial and Pre-Trial Schedule, Requiring Mediation, and Referring Certain Matters to Magistrate Judge [D.E. 17] ordered the parties to complete all discovery by October 22, 2019. Accordingly, the parties exchanged Rule 26 Initial Disclosures and on August 22, 2019, Defendant served its Request for Production of Documents upon Plaintiff. Plaintiff timely responded to Defendant's Request for Production on September 23, 2019. If a discovery dispute arises, the Standing Discovery Order for Magistrate Judge Bruce

Reinhart [D.E. 19] provides procedures for the parties to resolve their disputes before seeking Court intervention. Defendant failed to notify Plaintiff regarding any alleged discovery disputes prior to the instant Motion, despite the parties attending two discovery hearings before Magistrate Judge Bruce Reinhart on September 6, 2019 and October 3, 2019.

Defendant also served subpoenas addressed to several non-party entities, including Plaintiff's expert witnesses' professional affiliations. Plaintiff facilitated the document production for several non-party entities and timely supplemented its document production pursuant to the Court's amended discovery deadlines established by the Amended Scheduling Order [D.E. 58] and Order Granting in Part and Denying in Part Defendant's Motion to Continue Trial and Extend Deadlines [D.E. 61].

Because Defendant has not identified any constitutional provision, federal statute, rule of evidence, or Supreme Court rule that proscribes admission of information, facts, and testimony not previously disclosed by Plaintiff prior to suit being filed, Defendant's Motion should be denied.

## CONCLUSION

WHEREFORE, Plaintiff respectfully requests Defendant's Motion in Limine to Exclude Evidence and Testimony Relating to "Reserves," Bad Faith, Conduit Testimony, Other Claims Presented, and Documents Not Provided Prior to Suit, be denied in its entirety.

Dated this 23rd day of December 2019.

                                    **MERLIN LAW GROUP, P.A.**

                                    */s/ Eriselda Kuhn*
                                    **WILLIAM F. MERLIN, JR., ESQUIRE**
                                    Florida Bar Number: 364721
                                    **ERISELDA KUHN, ESQUIRE**
                                    Florida Bar Number: 1003031
                                    **SHANE S. SMITH, ESQUIRE**
                                    Florida Bar Number: 53130

MERLIN LAW GROUP, P.A.
777 S. Harbour Island Blvd., Suite 950
Tampa, Florida 33602
Telephone: (813) 229-1000
Fax: (813) 229-3692
Attorneys for Plaintiff
wmerlin@merlinlawgroup.com
ikuhn@merlinlawgroup.com
ssmith@merlinlawgroup.com
rbradley@merlinlawgroup.cm

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2019, I electronically filed the foregoing document with the Clerk of Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified below by notice of electronic filing generated by CM/ECF.

By: */s/ Eriselda Kuhn*

## SERVICE LIST

Lauren D. Levy, Esq.
Alexander Goerss, Esq.
LEVY LAW GROUP
3399 Ponce de Leon Blvd., Suite 202
Coral Cables, Florida 33134
lauren@levylawgroup.com
alex@levylawgroup.com
lourdes@levylawgroup.com
jocelyn@levylawgroup.com
nikki@levylawgroup.com

Scott M. Rosso, Esq.
David R. Shaheen, Esq.
GED Lawyers, LLP
171 North Federal Highway
Boca Raton, Florida 33487
pdlitlaw@gedlawyers.com
dshaheen@gedlawyers.com