UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19-cv-80111-BLOOM/Reinhart

CENTRE HILL COURTS
CONDOMINIUM ASSOCIATION, INC.,

    Plaintiff,

v.

ROCKHILL INSURANCE COMPANY,

    Defendant.
_____/

# ORDER

**THIS CAUSE** is before the Court upon Plaintiff Centre Hill Courts Condominium Association, Inc.'s ("Plaintiff") Motion for Partial Summary Judgment Against Defendant as to Liability for Breach of Insurance Contract, ECF No. [77] ("Motion"). The Court has reviewed the Motion, the supporting and opposing submissions, all relevant exhibits, the record in this case, the applicable law, and is otherwise fully advised. For the reasons explained below, Plaintiff's Motion is denied.

## I. BACKGROUND

Plaintiff, a condominium association, brings this action against Defendant Rockhill Insurance Company ("Defendant") for recovery of proceeds and benefits allegedly owed under an insurance policy (the "Policy") issued by Defendant. Plaintiff seeks to recover under the Policy for damages sustained during Hurricane Irma to its property located at 825 & 875 NW 13th Street, Boca Raton, Florida 33486 (the "Property").

Plaintiff originally filed this action against Defendant in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, which Defendant removed to federal court

on January 25, 2019. *See* ECF No. [1]. Plaintiff's Amended Complaint asserts a single count of breach of contract for Defendant's failure to pay insurance benefits allegedly owed under the Policy. ECF No. [10-1] at 13-16.

On December 10, 2019, Plaintiff filed the instant Motion, ECF No. [77], along with its corresponding Statement of Undisputed Material Facts, ECF No. [78] ("SOF"). On December 27, 2019, Defendant submitted its Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment, which incorporated Disputed Facts in response to Plaintiff's SOF, ECF No. [105] ("Response"). Further, on January 3, 2020, Plaintiff filed a Reply, ECF No. [110] ("Reply"), with an accompanying Reply Statement of Material Facts, ECF No. [111] ("Reply SOF").[1]

## II. MATERIAL FACTS

Based on the parties' briefing, along with the evidence in the record, the following facts are not genuinely in dispute unless otherwise noted.[2]

---

[1] It is worth noting that both parties take issue with the opposing party's briefs on the Motion before the Court. The deadline for the parties to file any dispositive motions in this case was December 9, 2019. *See* ECF No. [58]. Plaintiff filed the instant Motion on December 10, 2019, approximately three minutes late, citing technical issues for the delayed filing. *See* ECF Nos. [77] & [110] at 1 n.1. Defendant argues that this delay warrants the Court striking the Motion altogether. ECF No. [105] at 1 n.1. The Court disagrees. *See* Fed. R. Civ. P. 6(b)(1). Likewise, Defendant's Response fails to comply with numerous Local Rules: (1) Defendant's Response exceeds the twenty-page limit, S.D. Fla. L.R. 7.1(c)(2); (2) As Plaintiff notes, Defendant failed to contemporaneously file a separate opposing statement of material facts, *id.* at 56.1(b)(1); (3) The Disputed Facts in Defendant's Response are not set forth in separately numbered paragraphs, *id.* at 56.1(b)(1)(B); (4) The Disputed Facts repeat the text of Plaintiff's SOF paragraphs, *id.* at 56.1(b)(2)(A); and (5) The Disputed Fact paragraphs do not begin with "disputed" or "undisputed," *id.* 56.1(b)(2)(B) ("An opponent's Statement of Material Facts shall use, as the very first word in each paragraph-by-paragraph response, the word 'disputed' or 'undisputed.'"). Further, Plaintiff's Reply SOF fails to comply with multiple requirements under the Local Rules: (1) Plaintiff's Reply SOF does not consist of separately numbered paragraphs, *id.* at 56.1(b)(1)(B); (2) The Reply SOF repeats the text of Defendant's Disputed Facts, *id.* at 56.1(b)(2)(A), (b)(3)(B); and (3) Plaintiff's Reply SOF exceeds the ten-page limit, *id.* at 56.1(b)(1)(A). While these errors certainly warrant the Court striking all noncompliant briefs in their entirety, *see id.* at 56.1(d), in the interest of fairness and expediency, the Court will consider these noncompliant briefs in resolving the Motion at issue. However, the Court strongly cautions the parties that any further failure to comply with the Local Rules will result in the imposition of sanctions without further notice.

[2] Any facts alleged in Plaintiff's SOF that Defendant failed to address in its Disputed Facts are deemed admitted for the purposes of this Motion. *See* S.D. Fla. L.R. 56.1(c).

It is undisputed that, "[i]n consideration of the premium paid to it by Plaintiff, Defendant issued a commercial insurance policy, . . . which provided coverage for Plaintiff's Property for the policy period of June 15, 2017, to May 30, 2018." ECF No. [78] ¶ 2; ECF No. [78-1]. This Policy had a coverage limit of $9,016,622.00, and it "insure[d] against All Risks of Direct Physical Loss or Damage Excluding Flood and Earth Movement, or as listed in the Declaration Page or Endorsements attached hereto, occurring during the policy period as defined in the declaration pages." ECF No. [78-1] at 6. In addition, the Policy includes a Named Storm/Calendar Year Hurricane Deductible Endorsement ("Hurricane Deductible Endorsement"), which indicates that the following coverage is made a part of the Policy: "This policy insures against All Risks of Direct Physical Loss or Damage from Named Storm as listed in the Declaration Page attached hereto, occurring during the policy period as defined in the Declaration Page." *Id.* at 52. This Hurricane Deductible Endorsement subjects any losses due to a hurricane to a 3% hurricane deductible. *Id.*

On September 10, 2017 — during the policy period — Hurricane Irma struck South Florida. Plaintiff alleges that the Property was severely damaged during Hurricane Irma. ECF No. [78] ¶ 4. Defendant, however, disputes the allegation that Hurricane Irma was the cause of the damage to Plaintiff's Property, based on its investigation into Plaintiff's claim and the conclusions of its experts. ECF No. [105] at 2; ECF No. [78-6] at 9-10; ECF No. [78-14] at 1; Dep. of Arthur Ashworth 102:20-103:16, ECF No. [70-1] ("Ashworth Dep.").

On September 12, 2017, Plaintiff submitted a Property Loss Notice, reporting "Hurricane Irma Roof leaks, and potentially holes in the side of the building." ECF No. [78-2]. Defendant retained Engle Martin & Associates ("EM") as its third-party claims administrator and loss adjuster to investigate the damage to Plaintiff's Property. *See* ECF No. [78-1] at 27, ¶ 38; *see also* Dep. of Vincent Cicci 17:4-14, ECF No. [109-1] ("Cicci Dep."). On October 13, 2017, EM sent its field

adjuster, Ruben Molinar ("Molinar"), to inspect Plaintiff's Property to determine the extent of the damage, if any, and to advise Defendant on whether hiring a consultant or expert was necessary to more thoroughly investigate the damage to the Property. *See* ECF No. [78-3]; Dep. of Ruben Molinar 31:13-15, 73:6-8, ECF No. [98-1] ("Molinar Dep."). During Molinar's inspection, Plaintiff reported interior water damage to eighteen condominium units, but Molinar was only given access to three of these units. *See* ECF No. [78-3] at 26, 27, 30; ECF No. [98-1] at 156; Molinar Dep. 72:9-18.

On November 2, 2017, the EM adjuster assigned to investigate Plaintiff's claim on Defendant's behalf, Vincent Cicci ("Cicci"), informed Plaintiff that, based upon Molinar's initial inspection, Defendant had retained an engineer to inspect the Property, determine the extent of the damages sustained as a result of Hurricane Irma, and determine the cause and origin of the water intrusion. ECF No. [78-4]. Likewise, Cicci indicated that Defendant also retained a building consultant to prepare a loss estimate for the building damage. *Id.* Finally, Cicci advised Plaintiff that Defendant's investigation was ongoing and, in expressly reserving all of Defendant's rights under the Policy, referred Plaintiff to the language of certain relevant Policy provisions. *Id.* at 2-4. In particular, Cicci listed the coverage provisions regarding real property, personal property, and condominium units, noted the Policy's exclusions of coverage for losses caused by flood, and stated that, under Endorsement No. 10–Wind Driven Rain Sublimit of the Policy, "Wind Driven Rain" was not covered. *Id.* at 4.

On November 13, 2017, Defendant's building consultant, Young & Associates ("Y&A"), sent a representative to re-inspect Plaintiff's Property in order to prepare an estimated cost of the repairs necessary to restore the Property to its pre-loss condition. ECF No. [78-5]. During this re-inspection, the Y&A building consultant, Andrew Peters ("Peters"), was unable to access the

damaged interior units. Dep. of Andrew Peters 67:7-16, ECF No. [102-1] ("Peters Dep."). Peters ultimately produced an estimate report on February 28, 2018, which provided a total replacement cost value of $85,004.83 for the external Property damage observed. ECF No. [78-5].

Similarly, Arthur Ashworth ("Ashworth"), Defendant's retained engineer from Madsen, Kneppers & Associates ("MKA"), re-inspected the Property on November 14, 2017, but was also not provided access to the interior units. ECF No. [78-6]; Ashworth Dep. 47:18-48:2. A different MKA representative visited the Property again on December 8, 2017. ECF No. [78-6]. On January 9, 2018, MKA submitted an Observation Report to EM, which ultimately concluded that, "[b]ased on [MKA's] observations and research into wind speeds associated with Hurricane Irma, [MKA] believe[s] that the roofs of the subject buildings were not compromised or damaged due to winds from the hurricane." *Id.* at 9. Instead, MKA explained that the observed blisters, deterioration, and poor drainage on the roofs of Plaintiff's Property were "the result of deferred maintenance and the age of the roofing system." *Id.* In addition, MKA's Observation Report noted that the observed roof damage was "due to deferred maintenance exacerbated by winds from Hurricane Irma; however, wind driven rain at these locations is unlikely." *Id.* at 10.

On November 30, 2017, Plaintiff's public adjuster contacted EM requesting that the undisputed amount on Plaintiff's claim be released because it had been open for more than thirty days and inquiring whether EM needed any additional information to complete its investigation. ECF No. [78-7]. EM responded to this inquiry on December 7, 2017, indicating that Defendant was unable to make a coverage determination or issue any undisputed amount without the pending reports from Y&A and MKA. ECF No. [78-8]. EM's response also noted that Defendant had not received a copy of Plaintiff's written claim of loss, and that the verbal claim Plaintiffs presented to EM, specifically regarding the damaged interior units, differed from MKA and Y&A's reported

observations during their inspections. *Id.* at 1. As such, in its correspondence, EM formally requested that Plaintiff provide its estimate of the extent of the damages claimed. *Id.* at 2. Thereafter, Plaintiff submitted its signed proof of loss and corresponding estimate of damages to Defendant on December 13, 2017. ECF No. [78-9]. On December 22, 2017, EM acknowledged receipt of the proof of loss, but reminded Plaintiff of the ongoing investigation and of Plaintiff's obligation to fully comply with all policy requirements. ECF No. [78-10]. In addition, EM requested that Plaintiff revise its estimate to list the stated cost of the interior unit repairs on a per-unit basis and provide EM with dates and times during which MKA and Y&A consultants may inspect the damaged interior areas. *Id.* Lastly, EM noted that, upon receiving the requested information and completing the interior inspections, the consultants would finalize their reports and Defendant would provide its coverage position. *Id.*

Ultimately, on April 23, 2018, EM informed Plaintiff that Defendant would not be tendering any insurance proceeds under the Policy. ECF No. [78-14]. Specifically, EM explained that MKA's report that the roofs were in poor condition due to deferred maintenance precluded coverage of such losses. *Id.* Further, Y&A estimated that the cost to repair the building damage caused or exacerbated by winds from Hurricane Irma was $85,004.83, which fell below the $270,498.66 Policy deductible. *Id.* EM also advised that Plaintiff had neither provided the requested information on the claimed damages to the interior units, nor permitted Defendant's consultants to access these units to inspect the scope of the damages. *Id.* EM noted that Defendant's investigation was ongoing, but cautioned that Plaintiff's failure to provide the requested documentation and subsequent access to the damaged interior units for inspection would preclude coverage under the Policy. *Id.*

It is undisputed that, between April 23, 2018, and November 16, 2018, Plaintiff attempted to schedule the requested re-inspections on multiple occasions, but Defendant refused to re-inspect the Property prior to obtaining the requested documentation regarding the interior unit damage. On November 16, 2018, Defendant demanded that Plaintiff provide all documentation, information, and invoices previously requested on the interior unit damage and permit subsequent interior inspections by Defendant's consultants. ECF No. [101-1] at 25-28. Defendant's consultants from Y&A and MKA were eventually able to inspect the interior units on April 23, 2019. Peters Dep. 137:5-9; ECF No. [74-1] at 3-16. However, as of December 6, 2019, there remains some dispute as to whether Plaintiff had produced all documentation requested by Defendant on the damages to the interior areas.

## III. LEGAL STANDARD

A court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties may support their positions by citations to materials in the record, including, among other things, depositions, documents, affidavits, or declarations. *See* Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson*, 477 U.S. at 247-48).

A court views the facts in the light most favorable to the non-moving party, draws "all reasonable inferences in favor of the nonmovant and may not weigh evidence or make credibility determinations, which 'are jury functions, not those of a judge.'" *Lewis v. City of Union City, Ga.*,

934 F.3d 1169, 1179 (11th Cir. 2019) (quoting *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013)); *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006); *see also Crocker v. Beatty,* 886 F.3d 1132, 1134 (11th Cir. 2018) ("[W]e accept [the non-movant's] version of the facts as true and draw all reasonable inferences in the light most favorable to him as the non-movant."). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which a jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (quoting *Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden to demonstrate the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If a movant satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs.*, *LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Yet, even where a non-movant neglects to submit any alleged material facts in

dispute, a court must still be satisfied that the evidence in the record supports the uncontroverted material facts proposed by the movant before granting summary judgment. *Reese v. Herbert*, 527 F.3d 1253, 1268-69, 1272 (11th Cir. 2008); *United States v. One Piece of Real Prop. Located at 5800 S.W. 74th Ave., Miami, Fla.*, 363 F.3d 1099, 1103 n.6 (11th Cir. 2004) ("*One Piece of Real Prop.*"). Indeed, even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

## IV. DISCUSSION

Plaintiff, in the instant Motion, seeks partial summary judgment as to Defendant's liability for breach of insurance contract, arguing that it has demonstrated each of the essential elements of the asserted breach of contract claim by a preponderance of the evidence. Plaintiff also moves for partial summary judgment on Defendant's affirmative defenses. In its Response, Defendant contends that Plaintiff has failed to establish Defendant's breach of the Policy or that its affirmative defenses cannot succeed under any set of facts which it could prove. Defendant also argues that Plaintiff's arguments regarding the affirmative defenses must fail because Plaintiff did not to move to dismiss or strike the affirmative defenses at the pleading stage and it cannot now request such relief at the summary judgment stage. Thus, Defendant argues that the Motion should be denied in its entirety. The Court will separately address the breach of insurance contract and affirmative defense arguments below.

### A. Breach of insurance contract

Plaintiff first argues that the Court should grant partial summary judgment in its favor on the issue of Defendant's liability for breach of insurance contract. Specifically, Plaintiff contends that Defendant breached the Policy by refusing to compensate Plaintiff for its losses, even after

Plaintiff demanded payment of the insurance proceeds due and owing under the Policy. Plaintiff argues that because of Defendant's failure to perform its contractual obligations, Plaintiff was forced to file the instant action to recover damages for breach of contract and it continues to suffer ongoing harm as a result of the breach. Because each element of a breach of contract claim is established, Plaintiff contends that the Court should grant partial summary judgment on Defendant's liability for breach of insurance contract.

Defendant, on the other hand, asserts that Plaintiff has failed to establish the elements required for a breach of contract claim. First, Defendant notes that Plaintiff fails to identify any specific contractual provision that has been breached, relying instead on alleged statutory violations that Plaintiff attempts to incorporate into the Policy. Defendant contests the incorporation of statutes into the Policy because the statutory provisions cited by Plaintiff are not applicable to surplus line insurers such as Defendant. Further, Defendant states that Plaintiff has not cited to any case law to support the incorporation of these specific statutes as the basis of a breach of contract claim.

In its Reply, Plaintiff argues that Chapter 627 of the Florida Statutes broadly defines "insurer" in such a way as to apply to both domestic and surplus insurance carriers. Thus, Plaintiff contends that the statutes violated apply to Defendant and should be incorporated into the insurance contract in this case.

Under Florida law, "[t]he elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages." *Ferguson Enters., Inc. v. Astro Air Conditioning & Heating, Inc.*, 137 So. 3d 613, 615 (Fla. 2d DCA 2014) (citing *Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013)); *J.J. Gumberg Co. v. Janis Servs., Inc.*, 847 So. 2d 1048, 1049 (Fla. 4th DCA 2003); *Rollins, Inc. v. Butland*, 951 So. 2d 860, 876 (Fla. 2d DCA 2006) ("The

elements of an action for breach of contract are: (1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach.").[3] "A 'material breach' of a contract is a failure, without legal excuse, to perform any promise or obligation or that goes 'to the essence of the contract.'" *Oriole Gardens Condos., III v. Indep. Cas. & Sur. Co.*, No. 11-60294-CIV, 2012 WL 718803, at *11 (S.D. Fla. Mar. 6, 2012) (quoting *Covelli Family, LP v. ABG5, LLC*, 977 So. 2d 749, 752 (Fla. 4th DCA 2008); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972)). Further, a party injured by a breach of contract is entitled to recover those damages that "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered." *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002).

The parties here do not dispute that the Policy constitutes a valid contract that was in existence during the relevant time period at issue, and the Court agrees. *See* ECF No. [78] ¶ 2; ECF No. [78-1]; ECF No. [105] at 9; ECF No. [110] at 2. Thus, the first element of Plaintiff's breach of contract claim is satisfied. However, with regard to the second and third elements of a breach of contract action — namely, a material breach of the contract and resulting damages — the parties strongly dispute each other's rendition of the facts in support of their respective positions.

Plaintiff devotes a large part of its arguments with regard to Defendant's alleged material breach of the Policy to contesting and questioning the reliability of the investigative techniques and conclusions rendered by Defendant's consultants. *See* ECF No. [77] at 4-7.[4] Likewise, Plaintiff

---

[3] When resolving a coverage dispute, a federal court sitting in diversity will look to the Supreme Court of Florida for definite guidance on a subject. *State Farm Fire & Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004). In the absence of a decision from the Supreme Court of Florida that is on point, federal courts will follow relevant decisions from Florida's intermediate appellate courts. *Id.* If there are no such opinions, a federal court may examine case law from other jurisdictions that interpret similar policy provisions. *Id.*

[4] This Court, in a separate order, previously addressed the parties' competing *Daubert* motions. *See* ECF No. [137]. Thus, the Court will consider any relevant expert testimony in addressing the instant Motion.

compares its own experts' various reports and opinions with those of Defendant's representatives in attempting to establish the alleged material breach of the Policy. *Id.* These arguments, however, are the very essence of factual disputes that must be determined by a jury. Further, summary judgment is precluded because the resolution of the issues raised in Plaintiff's Motion would require the Court to improperly weigh evidence and make credibility determinations on the conflicting expert opinions as to the scope of the damages to the Property, the required methodologies used during the investigation, the cause of such damages (i.e., damage from Hurricane Irma versus deterioration from improper maintenance), the repairs required, and the cost of such repairs. Thus, Plaintiff's arguments with regard to Defendant's alleged material breach of the Policy present significant issues of material fact that warrant the denial of summary judgment.

Further, Plaintiff argues that § 627.70131, Florida Statutes, should be incorporated into the Policy, and that Defendant's failure to pay Plaintiff's insurance claim in this case further constitutes a material breach.[5] Section 627.70131 states: "Within 90 days after an insurer receives notice of an initial, reopened, or supplemental property insurance claim from a policyholder, the insurer shall pay or deny such claim or a portion of the claim unless the failure to pay is caused by factors beyond the control of the insurer which reasonably prevent such payment." Fla. Stat. § 627.70131. Another district court in the Southern District of Florida recently addressed the nearly identical arguments on a motion for partial summary judgment regarding a defendant's failure to pay insurance proceeds pursuant to § 627.70131:

> Plaintiff's second argument is that Fla. Stat. § 627.70131 is incorporated into the policy agreement and that Defendant violated this provision when it failed to pay or deny Plaintiff's insurance claim within ninety days from the date Plaintiff submitted its notice of loss . . . and that Defendant's failure to do so constitutes a

---

[5] As explained below, the Court concludes that Plaintiff's arguments on the merits of this issue fail. Thus, the Court need not address the issue of whether Defendant is exempt from the requirements of Chapter 627 of the Florida Statutes as a surplus lines insurer. *See* Fla. Stat. § 626.913(4); *see also Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 643 F. Supp. 2d 1356, 1361-62 (S.D. Fla. 2009).

violation of Florida law. Plaintiff's argument lacks merit, however, because the statute requires an insurer to pay or deny a claim within ninety days unless the failure "*is caused by factors beyond the control of the insurer* which reasonably prevent such payment." Fla. Stat. § 627.70131 (emphasis added). Defendant alleges that Plaintiff failed to comply with its obligations under the policy agreement with an insufficient production of documents and a lack of inspections of the property. Defendant also claims that Plaintiff failed to comply with its duties as the named insured and that this materially prejudiced Defendant's ability to adjust Plaintiff's claim. Plaintiff, of course, disputes this contention because Defendant should have had enough documents to make a coverage determination and that Defendant inspected the property on four separate occasions. This is ultimately an issue of fact for a jury to decide because Defendant has adduced evidence that there were factors beyond its control that required it to pay Plaintiff's insurance claim within ninety days. As such, Plaintiff's motion for partial summary judgment should be **DENIED**.[n.5]

> [n.5] We also note that, even if Defendant violated Fla. Stat. § 627.70131, the only penalty for an insurer's failure to pay a claim within ninety days is prejudgment interest — not summary judgment as to liability.

*St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 18-21365-CIV, 2019 WL 2010729, at *5 (S.D. Fla. Mar. 11, 2019), *report and recommendation adopted*, No. 18-21365-CIV, 2019 WL 2642747 (S.D. Fla. Apr. 17, 2019); *see also Vision I Homeowners Ass'n, Inc.*, 643 F. Supp. 2d at 1361-62 (noting that "the lack of a penalty [in the Florida Statute section at issue] further persuades the Court that summary judgment on this issue is not appropriate").

The instant case presents similar issues of fact surrounding Defendant's alleged violation of § 627.70131 as those discussed in *St. Louis Condominium Association, Inc.*. The Court likewise concludes that these factual issues are fatal to Plaintiff's Motion. Specifically, the evidence in the record establishes that Defendant repeatedly requested specific information and documentation from Plaintiff on the interior units that were damaged, the individualized repairs and estimates of cost for each unit, and any photos, receipts, invoices, estimates, etc. to substantiate the water damage in the interior units. *See, e.g.*, ECF No. [101-1] at 25-28; ECF No. [78-10]. Defendant also requested access to the affected units for re-inspection, after Plaintiff provided the requested

documentation, to allow Defendant's consultants to utilize such evidence in their ongoing investigation. *See, e.g.*, ECF No. [101-1] at 25-28; ECF No. [78-10]. Plaintiff's compliance with these requests is specifically required under the Policy as a precondition to Defendant's payment on any loss. ECF No. [78-1] at 32-33. This evidence presents issues of fact regarding Defendant's alleged violation of § 627.70131, and the corresponding breach, if any, of the Policy.

### B. Affirmative defenses

Next, Plaintiff argues that "Defendant's Affirmative Defenses fail as a matter of law and must be stricken and/or dismissed." ECF No. [77] at 11. Plaintiff also contends that some of these defenses should be dismissed because they are factually deficient, and Defendant cannot establish any genuine issues of material fact regarding these defenses. In its Response, Defendant first argues that all of Plaintiff's challenges to the affirmative defenses must fail because they are, in essence, untimely motions to strike or dismiss Defendant's Affirmative Defenses. Likewise, Defendant contends that genuine issues of material fact remain on each of the challenged defenses.

"An affirmative defense admits the facts of the complaint and asserts additional facts in justification or avoidance of a claim." *Biscayne Cove Condo. Ass'n., Inc. v. QBE Ins. Corp.*, 951 F. Supp. 2d 1292, 1305 (S.D. Fla. 2013) (citing *Morrison v. Executive Aircraft Refinishing, Inc.*, 434 F. Supp. 2d 1314, 1319 (S.D. Fla. 2005)). "Partial summary judgment may properly be granted on affirmative defenses." *Tingley Sys., Inc. v. HealthLink, Inc.*, 509 F. Supp. 2d 1209, 1218 (M.D. Fla. 2007) (quoting *Int'l Ship Repair & Marine Servs., Inc. v. St. Paul Fire and Marine Ins. Co.*, 944 F. Supp. 886, 891 (M.D. Fla. 1996)). "Plaintiff has the burden of showing that Defendant cannot maintain these defenses by a preponderance of the evidence." *Lebron v. Royal Caribbean Cruises, Ltd.*, No. 16-24687-CIV, 2018 WL 5098972, at *2 (S.D. Fla. Aug. 14, 2018) (citing *Eli Research, LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-38CM, 2015 WL 5934632, at *2

(M.D. Fla. Oct. 6, 2015)), *report and recommendation adopted*, No. 16-24687-CIV, 2018 WL 5098870 (S.D. Fla. Aug. 28, 2018). However, "it is never enough simply to state that the non-moving party cannot meet its burden at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The Court of Appeals for the Eleventh Circuit has held that "a moving party must point to specific portions of the record to demonstrate that the nonmoving party cannot meet its burden at trial." *Eli Research, LLC*, 2015 WL 5934632, at *3 (citing *United States v. Four Parcels of Real Property in Greene & Tuscaloosa Counties in the State of Ala.*, 941 F.2d 1428, 1438 n.19 (11th Cir. 1991) ("*Four Parcels*")). Upon such a showing, "[t]he defending party must rely on or submit record evidence in support of the purported affirmative defenses to create a genuine issue of material fact preventing the entry of summary judgment." *Meth Lab Cleanup, LLC v. Spaulding Decon, LLC*, No. 8:14-CV-3129-T-30TBM, 2015 WL 4496193, at *7 (M.D. Fla. July 23, 2015) (citation omitted).

"A defense which points out a defect in the plaintiff's prima facie case is not an affirmative defense." *In re Rawson Food Serv. Inc.*, 846 F.2d 1343, 1349 (11th Cir. 1989). "Nonetheless, the proper remedy is not to strike the claim, but rather to treat it as a specific denial." *Biscayne Cove Condo. Ass'n., Inc.*, 951 F. Supp. 2d at 1305 (quoting *Pujals ex rel. El Rey De Los Habanos, Inc. v. Garcia*, 777 F. Supp. 2d 1322, 1328 (S.D. Fla. 2011)).

As an initial matter, Defendant argues that Plaintiff's Motion on Defendant's Affirmative Defenses should be denied because, although couched as a motion for summary judgment, it is actually a motion to dismiss or strike these defenses. Federal Rule of Civil Procedure 12(f) states that "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. The court may act . . . . on its own; or . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after

being served with the pleading." Fed. R. Civ. P. 12(f). Here, Defendant filed its Answer, Affirmative Defenses, and Counterclaim, ECF No. [11], on February 1, 2019. On February 22, 2019, Plaintiff filed a Motion to Dismiss Defendant's Counterclaim. ECF No. [18]. However, Plaintiff neither filed a motion to strike prior to filing its Motion to Dismiss, nor moved to strike within the 21-day requirement set forth in Rule 12(f)(2).

In its Reply, Plaintiff contends that courts may, and often do, dispose of affirmative defenses on a motion for partial summary judgment. While Plaintiff's statement is generally correct, the Court disagrees that the instant Motion appropriately seeks to dispose of Defendant's Affirmative Defenses. Rather, the Court finds that the Motion is, in essence, an untimely motion to strike. *See Andreu v. Hewlett-Packard Co.*, No. 15-23270-CIV, 2016 WL 1697088, at *4 (S.D. Fla. Apr. 20, 2016) ("The plaintiff should not be allowed to circumvent the timeliness requirement of Rule 12(f) by simply labeling as a summary judgment motion what is essentially a motion to strike affirmative defenses particularly when the plaintiff has not shown good cause for this late filing." (footnote omitted)). Nevertheless, the Court also concludes that, on the merits, Plaintiff's Motion on Defendant's Affirmative Defenses must be denied.

Defendant's First Affirmative Defense alleges that "Plaintiff violated the Policy's Duties of the Named Insured in the Event of Loss or Damage. In particular, Plaintiff failed to provide [Defendant] with requested documentation and information relating to the claimed interior damage. Furthermore, Plaintiff failed to allow [Defendant's] representatives to inspect the claimed interior damage." ECF No. [11] at 15. Plaintiff argues that it is entitled to summary judgment on this defense because it has already established that it provided Defendant all the information it needed and assisted in Defendant's investigation of Plaintiff's claim. Likewise, Plaintiff argues that Defendant fails to include any facts in support of the Policy provisions at issue. However, as

discussed above, the Court concludes that there are issues of material fact in the record as to whether Plaintiff provided Defendant with all the requested documentation relating to the damage to interior units and whether it allowed Defendant's agents to access and inspect the damage to these interior areas. The existence of these issues of material fact preclude summary judgment on Defendant's First Affirmative Defense.

Defendant's Second, Third, Fifth, Sixth, Seventh, and Eighth Affirmative Defenses all concern exclusions or limitations to coverage under the Policy.[6] In the Motion, Plaintiff merely states that Defendant cannot meet its burden with regard to these defenses. Such conclusory allegations are insufficient for Plaintiff to meet its burden as the movant on summary judgment. *See Clark* 929 F.2d at 608 ("it is never enough simply to state that the non-moving party cannot meet its burden at trial"); *Four Parcels*, 941 F.2d at 1438 n.19 ("a moving party must point to specific portions of the record to demonstrate that the nonmoving party cannot meet its burden at trial"). Therefore, Plaintiff's Motion is denied as to these defenses.

Finally, Defendant's Fourth Affirmative Defense alleges that "all or part of the damage commenced/occurred prior to the effective date of the Policy and is therefore not covered under the Policy. In particular the Policy only provides coverage for direct physical loss sustained during the policy period." ECF No. [11] at 16-17. As discussed previously, the Court finds that there are

---

[6] Specifically, Defendant's Second Affirmative Defense states in relevant part "that all or part of the damage is excluded under the Policy's Wear and Tear Exclusion." ECF No. [11] at 16. The Third Affirmative Defense alleges "that all or part of the damage is excluded under the Policy's Faulty Workmanship Exclusion." *Id.* Further, Defendant's Fifth Affirmative Defense "asserts that any and all damage caused by or resulting from Wind Driven Rain is not covered under the Policy." *Id.* at 17. The Sixth Affirmative Defense states "that part of the damage is not covered under the terms of the Policy. In particular the Policy limits coverage for property within condominium units." *Id.* at 18. Additionally, Defendant's Seventh Affirmative Defense "asserts that all or part of the claimed damage is excluded under the Policy's Faulty Maintenance Construction and Repair Exclusion." *Id.* at 19. Finally, the Eighth Affirmative Defense alleges "that all or part of the claimed damage is excluded and/or limited under the Policy's Mold Provision." *Id.* at 20.

genuine disputes of material fact in this case about whether some or all of the Property's ultimate roof damage was caused by aging, wear and tear, or poor maintenance that predated the policy period. The contradictory facts alleged by each party with regard to the cause of the roof damage present factual issues that cannot be resolved at summary judgment. As such, Plaintiff's Motion is denied as to Defendant's Fourth Affirmative Defense.

## V. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** that Plaintiff's Motion for Partial Summary Judgment Against Defendant as to Liability for Breach of Insurance Contract, **ECF No. [77]**, is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on January 28, 2020.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record